**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN FEDERAL DISTRICT OF VIRGINIA (RICHMOND DIVISION)**

**Rebecca Thornock**

Plaintiff,

v.

**INTERNAL REVENUE SERVICE, U.S. DEPARTMENT OF THE TREASURY, OFFICE OF PERSONNEL MANAGEMENT, DEPARTMENT OF GOVERNMENT EFFICIENCY, OFFICE OF MANAGEMENT AND BUDGET, and Douglas O' Donnell, Russell Vought, Scott Bessent, Elon Musk, Steve Davis, and Charles Ezell in their official capacities**



ADDENDUM TO EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER

INTRODUCTION

Plaintiff, Rebecca Thornock, respectfully submits this addendum to her Emergency Motion for a Temporary Restraining Order (TRO) to address the potential scenario in which she receives a termination email from the Internal Revenue Service (IRS) the morning of Tuesday the 18th, or even Wednesday the 19th, before full consideration of this TRO. Plaintiff argues that any such termination is procedurally defective, lacks adequate notice, and should not be treated as valid until proper due process is afforded. As such, Plaintiff

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN FEDERAL DISTRICT OF VIRGINIA (RICHMOND DIVISION)**

**Rebecca Thornock**

Plaintiff,

v.

**INTERNAL REVENUE SERVICE, U.S. DEPARTMENT OF THE TREASURY, OFFICE OF PERSONNEL MANAGEMENT, DEPARTMENT OF GOVERNMENT EFFICIENCY, OFFICE OF MANAGEMENT AND BUDGET, and Douglas O' Donnell, Russell Vought, Scott Bessent, Elon Musk, Steve Davis, and Charles Ezell in their official capacities**

ADDENDUM TO EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER

INTRODUCTION

Plaintiff, Rebecca Thornock, respectfully submits this addendum to her Emergency Motion for a Temporary Restraining Order (TRO) to address the potential scenario in which she receives a termination email from the Internal Revenue Service (IRS) the morning of Tuesday the 18th, or even Wednesday the 19th, before full consideration of this TRO. Plaintiff argues that any such termination is procedurally defective, lacks adequate notice, and should not be treated as valid until proper due process is afforded. As such, Plaintiff

requests that this Court continue to recognize her employment status and grant the relief sought in the original TRO motion.

## LACK OF PROPER NOTICE AND OPPORTUNITY TO RESPOND

Federal law requires that probationary employees be provided with adequate notice and a meaningful opportunity to respond before termination. Under 5 C.F.R. § 315.804, a probationary employee must receive written notice stating the reasons for termination. Additionally, if the termination is based on post-appointment conditions, 5 C.F.R. § 315.805 requires that the employee be afforded an opportunity to reply both orally and in writing. Plaintiff has not been given any opportunity to challenge the termination decision or respond to its alleged basis. The government's failure to provide this fundamental procedural safeguard renders any termination notice invalid and unenforceable. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985) (holding that due process requires notice and an opportunity to be heard before termination).

## TERMINATION SHOULD NOT BE CONSIDERED FINAL UNTIL PROCEDURAL REQUIREMENTS ARE MET

Even if a termination notice is issued, it does not immediately sever the employment relationship when procedural violations exist. Because Plaintiff has not been properly notified or provided an opportunity to respond, her employment status should remain

unchanged until such procedural requirements are satisfied. Courts have recognized that improper terminations lacking due process may be stayed or reversed when challenged in federal litigation. See Perry v. Sindermann, 408 U.S. 593 (1972) (holding that employment rights cannot be arbitrarily revoked without due process). Plaintiff seeks similar relief, ensuring that she remains employed while the legality of her termination is reviewed.

NEED FOR IMMEDIATE INJUNCTIVE RELIEF

Given the imminent and procedurally deficient termination, Plaintiff requests that this Court issue an immediate Temporary Restraining Order maintaining her employment status pending further proceedings. Without such relief, Plaintiff will suffer irreparable harm, including loss of career stability, financial security, and disruption to her ability to challenge this termination effectively. Courts routinely grant TROs where due process violations and employment rights are at stake. See Elrod v. Burns, 427 U.S. 347 (1976) (recognizing that termination of public employment can constitute irreparable harm).

While Sampson v. Murray, 415 U.S. 61 (1974), held that employment termination alone does not automatically constitute irreparable harm, courts have carved out exceptions where due process violations, severe financial distress, and interference with constitutional rights are present. Given the procedural deficiencies in Plaintiff's termination and its direct impact on an active federal lawsuit, this case aligns with those exceptions, warranting emergency injunctive relief.

## RESPONSE TO POTENTIAL COUNTERARGUMENTS

**1. Probationary Employees Lack Procedural Protections**

Defendants may argue that probationary employees have no procedural protections before termination. However, this is incorrect. While probationary employees have fewer rights than tenured employees, federal law still requires adequate notice and an opportunity to respond. See 5 C.F.R. §§ 315.804 & 315.805. The failure to provide this process renders the termination unlawful.

**2. Termination Was Final Upon Issuance of Email**

Defendants may argue that the termination was final upon issuance of the email. However, federal courts have recognized that employment terminations are not finalized if procedural steps are lacking. In Gilbert v. Homar, 520 U.S. 924 (1997), the Supreme Court reaffirmed that due process violations can render an employment action defective. Plaintiff's termination should therefore not be considered final until procedural deficiencies are remedied.

**3. Back Pay and Reinstatement Are Adequate Remedies**

Defendants may argue that Plaintiff can seek back pay and reinstatement rather than injunctive relief. However, irreparable harm occurs when an employee loses employment due to due process violations. See Sampson v. Murray, 415 U.S. 61 (1974) (holding that employment loss may constitute irreparable harm where procedural violations occur). A TRO is necessary to prevent the damage before it happens.

## 4. Probationary Employees Lack Full Civil Service Protections

While the government may argue that probationary employees lack full civil service protections, it cannot ignore the requirement that terminations comply with procedural safeguards. Federal courts have consistently held that when an agency fails to follow its own regulations, such terminations may be deemed unlawful. See Vitarelli v. Seaton, 359 U.S. 535 (1959) (holding that government agencies must adhere to their own procedural rules when terminating employees).

AVOIDING TYRANNY

Trump's Mass Termination Order Contradicts His "Drain the Swamp" Rhetoric
While President Donald Trump has publicly declared that his administration is "draining the swamp" by removing bureaucratic inefficiencies and eliminating corruption, the reality is that his executive actions in overriding due process protections for federal employees demonstrate the very opposite.  A core principle of American democracy is that **no individual or government entity is above the law**—including the President and his administration. The concept of "draining the swamp" was meant to remove corruption and cronyism, yet by bypassing constitutional safeguards, the administration is undermining the same principles that it claims to uphold.

**1. Government Power Without Due Process Becomes Tyranny**
- The essence of corruption is **unchecked authority**—when government actors are

permitted to override constitutional protections without consequence, **the government itself becomes the very 'swamp' it claims to be fighting.**

- Mass terminations executed **without hearings, proper notice, or appeals** are not hallmarks of a fair and accountable government; they are indicators of **government overreach and oppression.**

**2. The Mass Firing of Probationary Employees is a Political Purge, Not a Reform**

- While claiming to **eliminate inefficiency**, this executive order disproportionately targets **lower-level and probationary employees**, many of whom have no political influence.

- This is not "draining the swamp"—it is **political maneuvering to consolidate power while eliminating government workers with no recourse to challenge their terminations.**

**3. Due Process is the Line Between Order and Oppression**

- When due process protections are stripped away, **government becomes an unchecked force of power, arbitrarily punishing individuals without recourse.**

- If Trump's administration is permitted to **bypass due process under the guise of efficiency**, what prevents any future administration from doing the same?

- The systematic disregard for constitutional protections reflects **the very bureaucratic abuse that 'draining the swamp' was meant to eliminate.**

**Conclusion: Trump's Overreach is the Swamp**

The mass termination of federal employees under the guise of "government efficiency" mirrors historical political purges that courts have consistently rejected.

- In Rutan v. Republican Party of Illinois, 497 U.S. 62 (1990), the Supreme Court ruled that broad-based employment terminations influenced by political considerations violate constitutional rights.
- Similarly, in Elrod v. Burns, 427 U.S. 347 (1976), the Court held that mass firings of government employees based on political affiliation undermine fundamental due process protections.

While the Trump administration claims this action "drains the swamp" it instead creates a more unchecked and politically motivated bureaucracy, contrary to longstanding legal protections for federal employees.

The Plaintiff asserts that while this administration frames its actions as a necessary reform to restore government accountability, the opposite is true. The mass firings without due process are an **unprecedented overreach that contradicts the administration's stated mission.**In bypassing legal safeguards, the administration is not fighting government corruption—it is **becoming** the very corruption it claims to oppose.

EQUAL PROTECTION

Additionally, the mass termination disproportionately affects lower-level federal employees while senior-level officials and political appointees remain unaffected. Such disparate treatment raises serious Equal Protection concerns under the Fifth Amendment's Due Process Clause. Courts have held that government employment actions that selectively burden certain employees without rational justification may violate Equal Protection principles. See Engquist v. Oregon Dept. of Agriculture, 553 U.S. 591 (2008)

PUBLIC INTEREST: The Broader Consequences of Mass Firings

Courts frequently consider the public interest when determining whether to grant a Temporary Restraining Order (TRO). The mass terminations at issue here do not simply impact Plaintiff and other employees; they have far-reaching consequences for national governance, public services, and economic stability.

**1. Government Instability Weakens National Functioning**

- Large-scale firings of probationary employees without adequate replacements **destabilize essential government functions**.

- Agencies like the Internal Revenue Service (IRS), which directly handle tax compliance

and enforcement, are particularly vulnerable to disruption. A poorly executed mass termination policy could cause **delays in tax processing, lost revenue collection, and taxpayer frustration**.

- Similar problems have arisen in historical government workforce reductions, where institutional knowledge was lost, leading to inefficiencies and long-term financial damage.

**2. Arbitrary Mass Terminations Undermine Public Trust**

- **The American public depends on a stable, functioning government.** When the government enacts sudden mass terminations with **no clear review process**, public confidence in fair governance is undermined.

- If this precedent is allowed to stand, **future administrations may also abuse executive authority** to conduct politically motivated purges.

- **Unchecked government power threatens all political affiliations**—today's firings could affect another group of employees under a different administration, making **this a non-partisan issue of due process.**

**3. The Economic Fallout of Large-Scale Firings**

- **The mass loss of jobs creates a ripple effect in the economy,** particularly for middle-Class government workers who rely on steady employment.

- If thousands of employees are suddenly removed without due process, **local economies will feel the strain as households lose income, businesses lose customers, and communities suffer from instability**.

- Historical economic studies on mass government layoffs indicate that **hastily enacted

employment reductions can cause long-term damage, leading to decreased productivity and costly rehiring efforts.**

**Conclusion: Public Interest Weighs Heavily in Favor of Issuing a TRO**

The government's claim that mass firings serve efficiency and accountability goals is **outweighed by the broader negative effects these actions will have on governance, the economy, and public trust in due process protections.**

For this reason, the public interest strongly supports granting the requested TRO.

**Legal Precedent Against Executive Overreach**

The judiciary has consistently ruled against attempts by executive officials to bypass established constitutional and administrative protections under the guise of efficiency. In several recent cases, courts have reinforced that **due process protections cannot be overridden by executive order alone.**

**1. Department of Commerce v. New York (2019)**
- The Supreme Court ruled that the Trump administration's attempt to add a citizenship question to the 2020 Census was **arbitrary and capricious**, violating the Administrative Procedure Act (APA).

- The Court found that executive discretion **must be backed by legitimate procedural justifications**—a principle that applies directly to this case, where firings are occurring without clear, individualized reviews.

**2. Seila Law LLC v. Consumer Financial Protection Bureau (2020)**

- The Supreme Court ruled that an agency director **could not be arbitrarily removed without cause**, reinforcing that **government personnel decisions must adhere to established legal procedures**.

**3. Trump v. Hawaii (2018)**

- While the Court upheld portions of the administration's travel ban, it **clarified that executive authority has limits and is subject to judicial review.** The ruling emphasized that **broad executive action must be justified with clear reasoning**.

**4. DHS v. Regents of the University of California (2020)**

- The Supreme Court struck down the Trump administration's attempt to end DACA without a thorough review, ruling that **hasty executive actions that ignore due process considerations are legally invalid.**

**Conclusion: Mass Firings Without Due Process Are Likely to be Struck Down**

If past precedent is any guide, the courts have **repeatedly rejected** executive actions that bypass due process, especially when those actions directly impact large populations of employees or citizens. The firings at issue here fall squarely within that framework, and the Plaintiff urges the Court to follow past precedent in protecting due process rights.

CONCLUSION

Absent immediate injunctive relief, Plaintiff's wrongful termination will proceed within hours or days, causing irreversible harm that cannot be remedied by monetary damages alone. Plaintiff respectfully urges this Court to issue an emergency Temporary Restraining Order (TRO) without delay, ensuring that she remains employed while this matter is fully litigated.

For the foregoing reasons, Plaintiff respectfully requests that this Court recognize that her Termination, if occurring shortly after or even before the submission of this TRO, lacks procedural validity and grant the TRO preventing her removal from her position with the IRS. Plaintiff further requests that this Court order the Defendants to provide proper notice and an opportunity to respond before enforcing any termination decision.

DATED: **2/18/2025**

Respectfully submitted,

Rebecca Thornock

3017 Mountain Rd
Glen Allen, VA,
23060-2050
PO Box 843

919-800-8600
rmthornock@gmail.com

*Rebecca J Thornock*

**Pro Se Plaintiff**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
__RICHMOND__ DIVISION

__REBECCA THORNOCK__
Plaintiff(s),

v.

Civil Action Number: _____

__IRS ET. ALL__
Defendant(s),

## LOCAL RULE 83.1 (N) CERTIFICATION

I declare under penalty of perjury that:

No attorney has prepared or assisted in the preparation of __ADDENDUM TO EMERGENCY MOTION__
(Title of Document)
__FOR TEMPORARY RESTRAINING ORDER__

__REBECCA THORNOCK__
Name of Pro Se Party (Print or Type)

__Rebecca J Thornock__
Signature of Pro Se Party

Executed on: __2/20/2025__ (Date)

OR

The following attorney(s) prepared or assisted me in preparation of _____.
(Title of Document)

_____
(Name of Attorney)

_____
(Address of Attorney)

_____
(Telephone Number of Attorney)
Prepared, or assisted in the preparation of, this document.

_____
(Name of Pro Se Party (Print or Type)

_____
Signature of Pro Se Party

Executed on: _____ (Date)