**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN FEDERAL DISTRICT OF VIRGINIA (RICHMOND DIVISION)**

**Rebecca Thornock**

Plaintiff,

v.

**INTERNAL REVENUE SERVICE ET AL.**

Case # 3:25-cv-00134-JAG

**PLAINTIFF'S REQUEST FOR RECONSIDERATION OF RETALIATION CLAIM**

To the Honorable Court,

Plaintiff Rebecca Thornock respectfully moves this Court to reconsider its dismissal of the retaliation claim, as the Court's reasoning mischaracterized the arguments presented in Plaintiff's filings. Specifically, the Court stated that the government's termination of Plaintiff was not based on the Bedford County case, implying that Plaintiff had argued a direct causal link between the two.

This misstatement of Plaintiff's claim suggests that the Court did not fully review or engage with Plaintiff's actual argument, which asserted a broader pattern of government retaliation

spanning multiple agencies and legal matters. This warrants reconsideration.

Furthermore, this motion is designed to expand on the government retaliation argument by discussing the direct position that the plaintiff held in corporate accountability. The Plaintiff's department was arguably targeted first, specifically for the purpose of relieving corporations of accountability in their handling of retirement plans. The Trump Administration is attempting to systematically undercut the ability for the IRS to hold corporations accountable.

LEGAL STANDARD FOR RECONSIDERATION

A motion for reconsideration is appropriate when:

1. The court has made an error of law or fact. (Fed. R. Civ. P. 59(e))

2. New evidence is presented that alters the basis of the ruling.

3. Manifest injustice would result from the ruling. (United States v. Holland, 214 F.R.D. 112,

114 (D.D.C. 2003))

Here, the Court's misunderstanding of Plaintiff's retaliation argument constitutes a clear error of fact, warranting reconsideration.

ARGUMENT

I. The Court Misstated Plaintiff's Retaliation Claim

At the hearing, the Court erroneously stated that Plaintiff's argument was that her
termination was a direct result of the Bedford County case. This was not Plaintiff's
argument.

- Plaintiff's claim is based on a systemic pattern of government retaliation—across
multiple agencies and administrations—against individuals who challenge
government overreach.

- Plaintiff's case is not about whether Bedford County directly influenced the IRS to
terminate her. Rather, it is about the government's repeated violations of due
process and employment protections, culminating in yet another instance of
retaliatory harm.

By dismissing Plaintiff's argument based on an incorrect premise, the Court failed to
properly analyze the actual retaliation claim before rejecting it.

II. The Government's Retaliatory Pattern Is Clear and Ongoing Regarding Due Process
Oppression

Had the Court fully engaged with Plaintiff's filings, it would have recognized:

1. Bedford County retaliated against Plaintiff's husband by stripping his property rights and evicting residents during COVID, despite the eviction moratorium.

2. The federal government is now engaging in similar behavior by terminating Plaintiff from federal employment without due process.

3. While these actions stem from different entities, they reflect a common pattern of governmental retaliation and suppression of due process rights.

Plaintiff's complaint and supporting evidence demonstrate a systemic issue, not a one-time event. Dismissing this claim without fully considering these facts is reversible error.

III. The Court's Dismissal Raises Procedural Concerns

Given that:

- The government failed to present a substantive counterargument against the retaliation claim;
- The judge's dismissal was based on a mischaracterization of Plaintiff's actual argument; and
- The ruling did not engage with key aspects of the complaint,

Plaintiff submits that the decision was premature and should be reconsidered. Courts have long held that judicial misstatements or misunderstandings of material claims justify reconsideration. (See, e.g., Smith v. Clark, 165 F.3d 1263, 1269 (9th Cir. 1999)).

IV. The Government's Failure to Present an Oral Argument and the Arbitrary Denial of the TRO**

At the prior hearing, the government failed to **substantively defend its actions** or provide a legitimate counterargument justifying Plaintiff's termination. Despite this **lack of opposition**, the Court declined to grant the TRO. This raises a significant due process concern—if the government is unable or unwilling to justify its actions, then the Plaintiff's termination was **presumptively arbitrary and capricious,** violating established constitutional protections. The Court's refusal to act **without opposition** further supports Plaintiff's assertion that the government's conduct is not merely negligent but part of a broader systemic disregard for procedural fairness.

V. The Delay in Granting Relief Itself Demonstrates a Pattern of Retaliatory Suppression**

The government has a **documented history of retaliatory actions** against Plaintiff and their family, particularly in connection to ongoing litigation in *Thornock v. Bedford County*. Plaintiff's termination **coincides directly with the escalation of Plaintiff's prior legal action**, reinforcing the claim that this firing was not incidental but **a continuation of a governmental pattern of retaliation against those who expose and challenge its systemic abuses.**

Furthermore, **delays in adjudicating clear due process claims are a form of suppression themselves.** By extending the timeline unnecessarily, the Court inadvertently enables **the very government conduct that Plaintiff is challenging—namely, the use of procedural maneuvers to silence and obstruct redress for constitutional violations.**

VI. The Court Should Reconsider Its Position on the Retaliation Claim and the TRO**

Given the weight of the constitutional issues at stake, Plaintiff respectfully requests that this Court reconsider its position regarding the **retaliation claim** and the **TRO.** The government's failure to justify the terminations, combined with the **pattern of systemic suppression and procedural delays**, creates a compelling case for injunctive relief.

VII. The Government's Retaliatory Pattern is Clear and Ongoing Regarding Systematic Efforts to Weaken IRS Oversight on Corporations

The Court's dismissal of Plaintiff's retaliation claim failed to consider the broader systemic context in which this termination took place. Plaintiff was not merely an employee of the IRS—she was working in a division specifically responsible for auditing corporations and ensuring compliance with retirement account contributions for employees.

1. The Trump Administration's Systematic Effort to Weaken IRS Oversight on Corporations

The Trump administration's mass firings of probationary employees at the IRS were not random. They appear to be a deliberate and targeted effort to weaken oversight of corporate financial compliance.

> • The Trump administration has a documented history of undermining regulatory enforcement against corporations, including cutting IRS funding for corporate audits and attempting to weaken enforcement of retirement plan compliance (ERISA obligations).

> • Plaintiff worked in a division that directly audited corporate compliance with financial obligations owed to employees, including retirement account contributions and pension compliance.

> • By eliminating employees in this division, the administration effectively dismantled a key regulatory oversight function, allowing corporations to avoid scrutiny on financial obligations to workers.

This is not a coincidence—it is a strategic attack on regulatory oversight. The probationary terminations disproportionately affected employees in IRS divisions responsible for corporate financial enforcement, while other IRS enforcement sectors (such as individual tax compliance) were left largely intact.

Case Law Supporting Selective Retaliation Against Regulatory Employees:

• Rankin v. McPherson, 483 U.S. 378 (1987) – Government employees cannot be terminated based on their engagement in matters of public concern or political retaliation.

• Pickering v. Board of Ed., 391 U.S. 563 (1968) – Retaliatory government actions against employees involved in oversight or accountability functions violate First Amendment protections.

• Elrod v. Burns, 427 U.S. 347 (1976) – The government may not selectively terminate employees for political advantage or to suppress particular viewpoints.

These cases establish that the government cannot target employees based on the political consequences of their role. The IRS corporate compliance division exists to audit financial abuses by large corporations, and eliminating the employees enforcing these laws has clear political and financial benefits for corporate interests aligned with the administration.

2. These Terminations Function as Government Retaliation

Even if the administration did not personally single out Plaintiff by name, the fact remains that the branch of government she worked for was targeted as an act of political retaliation—not against her alone, but against the enforcement of corporate accountability as a whole.

• The IRS probationary mass firings disproportionately impact divisions that regulate corporate financial compliance.

• The administration has taken no equivalent action against IRS divisions that focus on small businesses or individual taxpayers.

• This suggests a pattern of selective enforcement designed to weaken regulatory oversight of corporations while maintaining strict enforcement against everyday taxpayers.

Case Law Supporting Retaliatory Firing as a Constitutional Violation:

• Hartman v. Moore, 547 U.S. 250 (2006) – Government actors violate constitutional protections when they engage in retaliatory conduct designed to suppress oversight, speech, or lawful regulatory activity.

• Garcetti v. Ceballos, 547 U.S. 410 (2006) – Public employees engaged in matters of significant public interest (such as regulatory oversight) cannot be fired simply to serve a political agenda.

The government cannot dismiss regulatory employees for political advantage any more than it can fire law enforcement officers for investigating politically inconvenient crimes.

3. The Retaliation is Consistent with Government Overreach in the Bedford County Case

This Court cannot view Plaintiff's termination in isolation. The common thread between the Bedford County case and the IRS mass firings is the systemic abuse of government authority to shield politically favored interests:

• Bedford County retaliated against Plaintiff's family by abusing zoning and permitting authority to shut down a legal business.

• The federal government is now abusing its employment powers to dismantle oversight and financial protections for American workers.

• In both cases, the government selectively enforced rules to favor powerful interests over legal protections for individuals.

Case Law Supporting Patterns of Systemic Retaliation:

• Village of Willowbrook v. Olech, 528 U.S. 562 (2000) – Government officials engaging in selective enforcement for retaliatory purposes violate Equal Protection Clause protections.

• Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977) – Even when multiple factors contribute to a government action, if retaliation is a substantial factor, the action is unlawful.

These cases demonstrate that Plaintiff's termination is not an isolated decision but part of a larger pattern of suppressing regulatory oversight.

4. This Court Must Recognize the Constitutional Danger in Allowing This to Continue

If this Court declines to recognize the clear retaliatory nature of these terminations, it risks setting a dangerous precedent:

• The executive branch could systematically dismantle regulatory oversight simply by firing the employees responsible for enforcement.

• This tactic could be expanded to other agencies—for example, by terminating FDA regulators who enforce food safety or SEC auditors who investigate financial fraud.

• The judiciary has a duty to prevent this erosion of legal oversight. If agencies can selectively terminate employees in oversight roles, they effectively nullify statutory protections through executive fiat.

Case Law on Judicial Oversight of Government Overreach:

• Free Enterprise Fund v. Public Company Accounting Oversight Board, 561 U.S. 477 (2010)

– The Supreme Court recognized that regulatory oversight agencies serve a constitutional function in holding government and corporate entities accountable.

• Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579 (1952) – The executive branch may not use its power to undermine established legal frameworks through arbitrary firings or removals.

For these reasons, the Court should reconsider its dismissal of Plaintiff's retaliation claim and fully examine the wider systemic implications of this targeted action

VIII. SYSTEMIC IMPACT OF TARGETD LAYOFFS

In light of recent developments, it's important to highlight that the Trump administration has undertaken significant actions that undermine the Internal Revenue Service (IRS) and its oversight capabilities, particularly concerning corporate audits and retirement plan compliance.

1. Systematic Reduction of IRS Enforcement Capabilities

The administration has implemented substantial budget cuts to the IRS, leading to a marked decrease in the agency's ability to conduct audits of large corporations. Notably, audits of corporations with over $100 million in income have dropped by 91% over the past decade. This decline in enforcement allows corporations to operate with less scrutiny, potentially at the expense of employees' retirement security.

2. Targeted Layoffs Impacting Critical Divisions

In a move that further debilitates the IRS's functionality, the Trump administration has initiated layoffs affecting over 6,000 IRS employees during the peak tax filing season. These cuts are poised to cause significant delays in tax processing and diminish the agency's capacity to enforce tax laws effectively.

3. Executive Actions Curtailing IRS Operations

President Trump has issued executive orders halting the hiring of federal employees, including those at the IRS. This freeze impedes the agency's ability to onboard necessary personnel, further weakening its enforcement divisions responsible for overseeing corporate compliance with retirement plan regulations.

4. Legislative Changes Affecting Retirement Plan Oversight

The administration's policies have also influenced the enforcement of retirement plan regulations. While the Setting Every Community Up for Retirement Enhancement (SECURE) Act of 2019 introduced changes to retirement plans, subsequent executive actions and budgetary constraints have hindered the IRS's ability to effectively implement and oversee these provisions, potentially compromising the financial security of employees relying on these plans.

These actions collectively suggest a deliberate strategy to weaken the IRS's oversight functions, particularly those related to corporate audits and retirement plan compliance. This undermines the agency's role in ensuring that corporations fulfill their financial obligations to employees, including the proper management of retirement funds.

By systematically reducing the IRS's capacity to enforce compliance, the administration effectively diminishes protections for employees' retirement security, aligning with corporate interests at the potential expense of individual financial well-being.To that end,

Plaintiff requests:

1. **Immediate reconsideration of the denial of the TRO** based on the totality of due process and retaliation evidence.

2. **A requirement that the government formally justify its opposition to the TRO**—or, in the absence of such justification, reconsider granting immediate relief.

3. **Recognition that this delay is not neutral but instead part of an ongoing pattern of governmental suppression**, reinforcing the necessity of immediate judicial intervention.

IX. GOVERNMENT ABUSE OF POWER: PARALLELS BETWEEN THE BEDFORD COUNTY EVICTIONS AND THE FEDERAL TERMINATIONS

The government's systematic disregard for due process is not new. Plaintiff has already experienced the full force of an abusive, unaccountable government when Bedford County forcibly removed people from their homes during COVID without any legal justification or due process. Now, the federal government is using the same blueprint to forcibly remove Plaintiff from employment without notice, hearing, or meaningful opportunity to respond.

The patterns of abuse are identical:

**Federal Terminations (2025)**

**Bedford County Evictions**

**(2020-2021)**

Government ignored due process protections when it forced individuals out of their homes with nowhere to go.

**Government ignored due process protections when it terminated thousands of probationary employees en masse with no individualized assessment.**

Evictions occurred during the COVID moratorium, when removals were explicitly prohibited under federal law.

**Mass terminations occurred despite clear due process protections for federal employees under MSPB and other procedural safeguards.**

Residents were given no meaningful hearing, no opportunity to challenge their eviction, and no alternative housing options.

**Employees were given no meaningful review, no opportunity to challenge their firing before it happened, and no chance to correct alleged deficiencies.**

**Federal officials are weaponizing government power to create fear and force compliance.**

Local officials weaponized

government power to create fear

and force compliance.

The same unlawful tactics are being used across different levels of government: strip away

legal protections, overwhelm individuals with bureaucracy, and crush any meaningful

opportunity to fight back.

This Court cannot allow history to repeat itself. When Bedford County forced people into

homelessness in direct violation of legal protections, there was no accountability. The

government suffered no consequences for overriding fundamental rights. This emboldened

them, and now the federal government is applying these same oppressive tactics at a

national scale.

If this Court does not intervene, the message is clear:

• Government entities at all levels can ignore due process whenever it suits them.

• The burden is on the individual—not the government—to fight back after the damage is

done.

• Unlawful government actions will continue unchecked until courts step in and stop them.

The Bedford County case and this case are linked—not by coincidence, but because this is

the new model for government suppression. If local governments can get away with

violating constitutional rights, it empowers the federal government to do the same. This
Court must break that cycle.

## X. ESTABLISHING RETALIATION CONNECTION BETWEEN IRS CASE AND BEDFORD COUNTY CASE

The Plaintiff asserts that her termination from the IRS is part of a broader pattern of
government retaliation, which began with the Plaintiff and her family's legal dispute with
Bedford County. The Bedford case, which centers on egregious due process violations and
government overreach, forced Plaintiff and her family into financial distress, culminating in
a bankruptcy caused by unlawful regulatory obstruction. The termination from the IRS is
simply a continuation of this pattern, where government actors—whether at the local or
federal level—have systematically ignored legal protections and retaliated against
individuals who assert their constitutional rights.

The Plaintiff was employed in a division of the IRS tasked with ensuring corporate
compliance with tax and retirement laws. This directly threatens the financial interests of
political and corporate entities aligned with the current administration, making the
decision to target and eliminate her position highly suspect. The administration's executive
orders have been framed as a sweeping policy decision, yet the selection of which
departments and divisions to purge first raises legitimate questions about intentional

political retaliation against government employees engaged in enforcement actions against corporate non-compliance.

The Government's Due Process Failures in Both Cases Mirror Each Other:  The Plaintiff's termination follows the same pattern of due process violations seen in the Bedford case. Just as Bedford County ignored legal requirements when unlawfully revoking business permits and forcing people from their homes during the COVID-19 eviction moratorium, the IRS and OPM have now terminated Plaintiff without proper procedural safeguards in a clear violation of her constitutional rights as a federal employee. The government's continued abuse of power—both locally and federally—demonstrates a reckless disregard for the legal protections afforded to American citizens.

The Court's Responsibility to Prevent an Ongoing Due Process Crisis: If the Court fails to recognize this escalating pattern of government misconduct, it sets a precedent whereby government entities at all levels can weaponize policy, bureaucracy, and employment decisions to suppress legal challenges and punish dissent. The Plaintiff respectfully urges this Court to consider not just the immediate injustice of her termination but also the broader implications of allowing due process violations to go unchecked. The Bedford County lawsuit and this case are not isolated events—they are part of a growing crisis in which government actors abuse procedural loopholes to undermine the legal protections of those who challenge them.

XI. Plaintiff's Justification for Utilizing a PO Box Instead of a Residential Address

Plaintiff respectfully declines the Court's request to provide a personal residential address and asserts that the use of a Post Office Box (PO Box) is legally sufficient for service and court filings. This decision is made not out of noncompliance, but out of necessity for personal safety and protection against potential government retaliation. Given the nature of Plaintiff's case, which involves whistleblower claims and allegations of systemic government retaliation, revealing Plaintiff's home address would create unnecessary risks and undermine their ability to litigate this case without fear of further harm.

1. Use of PO Box for Legal Correspondence is Standard Practice

Under federal law and common legal practice, PO Boxes are recognized as valid mailing addresses for court filings, particularly in cases where personal security is a concern. Many government agencies, law firms, and pro se litigants routinely use PO Boxes to receive official correspondence securely. Courts routinely allow litigants to use PO Boxes when a valid reason, such as safety concerns or potential harassment, exists.

2. Additional Retaliation Concerns Tied to Bedford County Litigation

Plaintiff is currently engaged in an active legal battle against Bedford County for government retaliation and due process violations. Given the contentious nature of that

case and its implications, Plaintiff has taken extra precautions to avoid potential harassment, surveillance, or further punitive actions. The federal government has already engaged in actions that suggest a pattern of retaliatory behavior, further justifying Plaintiff's need for a secure mailing address.

3. The PO Box is a Secure and Verified Address for Court Correspondence

While Plaintiff acknowledges the omission of the specific PO Box number in previous filings, this was an unintentional clerical error, which has now been corrected. The correct mailing address is:

Rebecca Thornock

3017 Mountain Road

Glen Allen, VA 23060-2050

**PO Box 843**

Plaintiff will promptly update this information with the Court to ensure all official documents are received in a timely manner. This address is an official, monitored postal location that guarantees receipt of all court filings, notices, and related communications in accordance with standard legal procedures.

4. No Legal Requirement to Provide a Residential Address in this Context

There is no explicit legal requirement that a plaintiff must provide a personal residential address when a valid and monitored mailing address has been provided. The U.S. Postal Service ensures reliable delivery to PO Boxes, making them an equally effective means of communication for court proceedings. Given that many federal government agencies, businesses, and legal entities operate using PO Boxes, requiring a residential address would create an unfair and unnecessary burden on the Plaintiff, particularly in a case involving alleged government misconduct.

For the reasons outlined above, Plaintiff respectfully requests that the Court accept the updated PO Box information as the legally sufficient mailing address and recognize the necessity of shielding personal information in a case where government retaliation is a core issue. Plaintiff will immediately update the docket with the correct PO Box to ensure compliance with court procedures.

XII. Conclusion & Request for Relief

For the foregoing reasons, Plaintiff respectfully requests that this Court reconsider its denial of Plaintiff's retaliation claim. The government has failed to provide a meaningful opposition to the allegations, reinforcing the arbitrary and capricious nature of Plaintiff's termination. Moreover, the Court's initial ruling did not fully consider the broader systemic

pattern of retaliation against Plaintiff and her spouse, who has an active federal lawsuit against another government entity for similar due process violations.

Specifically, Plaintiff requests that the Court:

1. Reconsider its denial of the retaliation claim and allow it to proceed to full briefing and discovery.

2. Acknowledge the systemic pattern of government retaliation against the Plaintiff and her spouse as relevant context in assessing the due process violations at hand.

3. Grant an immediate hearing on this issue or alternatively, reconsider the temporary restraining order in light of these arguments.

4. Accept Plaintiff's PO Box as a legally sufficient address given the nature of this case, which involves whistleblower protections and government retaliation.

Failure to provide relief would not only sanction unlawful government overreach but also set a dangerous precedent allowing government agencies to retaliate against whistleblowers and legal challengers without consequence. The Court should seize this opportunity to reinforce the fundamental principles of due process and prevent further unconstitutional conduct by the federal government.

Respectfully submitted,

Rebecca Thornock

Plaintiff, *Thornock v. IRS et al.*

February 25th, 2025

-Rebecca J. Thornock