UNITED STATES' FEDERAL DISTRICT COURT



EASTERN DISTRICT OF VIRGINIA – RICHMOND DIVISION

Rebecca Thornock, Plaintiff

vs.

IRS et al, Defendant

Case No.: Case # 3:25-cv-00134-JAG

PLAINTIFF'S MOTION TO SUPPLEMENT RECORD REGARDING ONGOING RETALIATION, HOUSING INSTABILITY, AND FINANCIAL HARDSHIP RESULTING FROM DEFENDANT'S UNLAWFUL TERMINATION AND THIS COURT'S DELAY IN GRANTING RELIEF

NOW COMES Plaintiff Rebecca Thornock, pro se, and respectfully moves this Honorable Court to take judicial notice of recent events directly impacting her housing stability and financial hardship, which further demonstrate the irreparable harm caused by Defendant's unlawful actions. These events, particularly the conduct of Plaintiff's landlord, Bonnie James, underscore the continued financial and personal destabilization resulting from Defendant's actions and the Court's failure to act on Plaintiff's request for immediate relief.

I. INTRODUCTION

Plaintiff was wrongfully terminated from her position at the IRS, causing severe financial hardship that has now jeopardized her ability to secure stable housing for her family, including three minor children. This hardship has been exacerbated by Plaintiff's landlord, Bonnie James, who has refused to extend the family's lease by even a single month, despite knowing Plaintiff's ongoing legal battle and financial struggle.

When Plaintiff inquired about the possibility of extending the lease by just one or two months to allow for time to secure reasonable alternative accommodations, Ms. James outright refused, stating only that she 'cannot help' while actively avoiding answering why she would not allow the extension.

Despite Plaintiff and her family being fully paid on rent, with the LDS Church covering the most recent payment due to Plaintiff's job loss, Ms. James is leveraging Plaintiff's weakened position to harass and intimidate her family into leaving on her terms.

Additionally, Ms. James has continuously rescheduled the required rental inspection week after week, adding to the ongoing stress and frustration experienced by Plaintiff's family. After failing to arrive at previously scheduled times, she expected Plaintiff to accommodate her tardiness, despite having offered no accommodation whatsoever for the significant housing and financial challenges Plaintiff's family is facing.

While Ms. James has consistently refused to provide any justification for her insistence that Plaintiff's family vacate the home, it is strongly suspected that her motivations are entirely personal and unrelated to any financial or legal need. In 2024, Ms. James relocated from the property that the plaintiff currently resides to Florida, where she was impacted by a huge hurricane, and later returned to Virginia, moving into a vacant four bedroom home that she owns in Ashland, Virginia, where she keeps between 20 to 30 dogs in her sun room and garage. It appears that Ms. James now simply wishes to return to her four-bedroom home in Montpelier for personal reasons, evicting a family of five to make space for herself and her dogs.

To add to the gross irony, Ms. James essentially demanded empathy from the plaintiff when she was misplaced by the storm, crying on the phone to the plaintiff over her hardships, while she has provided none and only severely exacerbated the plaintiff's crisis in order to forcibly intimidate and remove her from the rental property. She didn't even care to offer her condolences for the job loss. Furthermore, she stated that she knows what it's like to have two children and no job, while providing absolutely no flexibility to accommodate the current situation.

Ms. James' actions reflect a pattern of prioritizing her own desires over both legal requirements and the well-being of those around her. Former neighbors in Montpelier previously expressed concerns about her keeping numerous dogs on the property, despite county regulations requiring kennels to be set back at least 200 feet from property lines.

Given that her garage and sunroom in Montpelier—where she previously housed the dogs—are only approximately 50 feet from the property line, Ms. James does not appear to meet this requirement.

Moreover, it is reasonable to suspect that Ms. James' sudden insistence on reclaiming the Montpelier property may be an attempt to escape pressure from residents in Ashland regarding her ongoing issues with keeping an excessive number of dogs. If true, this would mean that rather than taking responsibility for her own actions, Ms. James is choosing to displace a family of five for her own convenience—continuing a pattern of selfish disregard for others during a well-known national housing crisis.

If neighbors in Montpelier—a larger, more spread-out area—had concerns about her disregard for kennel regulations, then it stands to reason that her current residence in Ashland, which is far more densely populated at only 0.5 acres, has resulted in even greater scrutiny from those living around her. In such a confined space, the presence of 20-30 dogs would undoubtedly create noise disturbances, sanitation concerns, and potential code enforcement issues—placing her under mounting pressure from both neighbors and local authorities.  Instead of addressing the root cause of her issues—her continued refusal to comply with zoning regulations—she is attempting to force Plaintiff and her family out of their home to relocate herself and her numerous dogs back into a property where she still does not meet the legal requirements to operate a kennel. This move is not about

necessity; it is about evading the consequences of her own actions, at the direct expense of a family of five who have paid their rent in full.

Furthermore, this incident is a direct consequence of this Court's delay in ruling on Plaintiff's Temporary Restraining Order (TRO) against the IRS. Plaintiff sought immediate relief due to the devastating impact of her wrongful termination, which has now resulted in housing instability, harassment, and fear of homelessness. This Court stalled the TRO without valid justification and without any legitimate defense presented by the Attorney General. Had the Court acted in a timely manner, Plaintiff would have had the financial security necessary to prevent this situation from escalating.

II. FACTUAL BACKGROUND

1. Plaintiff and her husband made a reasonable inquiry to landlord Bonnie James regarding a one- or two-month lease extension to allow additional time to secure suitable housing, given their financial challenges.
2. Ms. James refused to even consider the request, stating that she "cannot help" while actively avoiding any explanation for her refusal.
3. Ms. James rescheduled the rental inspection multiple times over several weeks, causing frustration and uncertainty.

4. On March 9th, 2025, Ms. James scheduled an inspection for 10:00 AM but later pushed the time to 10:40 AM. However, she arrived just past 10:30 AM, as Plaintiff's husband was leaving with all three children, assuming the visit would be rescheduled.

5. Ms. James, likely unaware that Plaintiff was home, remained on the property for over an hour, accompanied by four unknown men. Rather than leaving or attempting to professionally reschedule, she circled the home, peered through windows, and lingered with her group in an intimidating manner.

6. Plaintiff, feeling extremely unsafe and intimidated, remained inside rather than risk a confrontation with Ms. James and the four unknown men.

7. After Plaintiff expressed extreme distress and fear that Ms. James and her group might attempt to enter the home without permission, her husband contacted law enforcement. The Montpelier, Virginia Police Department responded to the call, and the incident was documented under Case Number 25-038601.

8. It remains unclear why Ms. James felt the need to bring four men with her for a simple rental inspection, particularly after previously rescheduling multiple times. Her conduct was clearly intended to exert psychological pressure and intimidation, rather than conduct any legitimate inspection.

9. Ms. James actions in bringing four men to the property and peering through the windows while the plaintiff was alone, not only constitute intimidation, but may also rise to the level of unlawful entry or harassment under Virginia Law.

9. Had the Court ruled on the TRO in a timely manner, this incident could have been prevented. Plaintiff's financial instability and vulnerability stem directly from the IRS's wrongful termination, compounded by this Court's failure to provide emergency relief.

III. THE LANDLORD'S ACTIONS RESULT FROM SYSTEMIC FAILURES BY THE IRS AND THIS COURT

10. Had Plaintiff not been unlawfully terminated, she would have had the financial stability to secure housing on a normal timeline, avoiding the desperate situation her family now faces.

11. Had this Court not stalled ruling on Plaintiff's TRO without valid justification, Plaintiff would have had the necessary resources to secure alternative housing, preventing the current housing crisis from escalating to landlord harassment and intimidation.

12. The pressure to vacate on an expedited timeline, despite reasonable attempts to negotiate an extension, further demonstrates the irreparable harm caused by Defendant's actions and this Court's failure to act.

13. While Plaintiff and her husband are fully paid on rent, the fact that charitable assistance was necessary to make this possible further underscores the extent of the damage caused by the IRS' wrongful termination.

14. Ms. James is using Plaintiff's financial vulnerability as leverage to push her family out in an intimidating and aggressive manner.

## IV. CONNECTION TO THE BEDFORD COUNTY CASE

15. Plaintiff and her husband are simultaneously engaged in active litigation against Bedford County in this same federal district court, where due process violations led to the forced closure of their business and subsequent bankruptcy.

16. The IRS termination and Bedford County's actions are directly linked in that both represent unchecked governmental overreach, which has financially devastated Plaintiff's family.

17. Both cases demonstrate systemic violations of due process, each compounding the harm that has now resulted in Plaintiff's present housing crisis.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Honorable Court:

1. Acknowledge that this Court's delay in ruling on Plaintiff's TRO directly contributed to the ongoing harm she is experiencing.

2. Take judicial notice of the documented harassment and intimidation tactics used by Plaintiff's landlord, Bonnie James, as further proof of the financial instability and undue hardship resulting from Defendant's wrongful termination.

3. Consider this additional evidence in assessing the severity of Plaintiff's harm and need for relief.

4. Grant any further relief that the Court deems just and proper.

Respectfully submitted,

Rebecca Thornock

Pro Se Plaintiff

*Rebecca J Thornock*

March 10th, 2025