IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | | |
|---|---|---|
| REBECCA THORNOCK, | ) | |
| | ) | Civil No. 3:25-cv-134-JAG |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| INTERNAL REVENUE SERVICE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

UNITED STATES' RESPONSE TO PLAINTIFF'S "RESPONSE TO COURT DEADLINE"

The United States of America on behalf of its Internal Revenue Service, by counsel and pursuant to the Order of the Court entered on February 24, 2025, (Dkt 8) responds to "Plaintiff's Response to Court Deadline, Motion for Expedited Ruling on Temporary Restraining Order, and Motion to Proceed Without Defendants['] Response" filed February 26, 2025, (Dkt 11) ("Plaintiff's Response")[1] as follows:

INTRODUCTION

No matter how the Plaintiff attempts to frame her current circumstances, this action is a dispute about federal employment – one that is particularly inappropriate for the type of extraordinary emergency relief[2] that Plaintiff seeks here. The Supreme Court has ruled that

---

[1] Following a telephone conference between the Court and the parties on February 24, 2025, the Court ordered further briefing in order to address the claim "that the defendants violated [Plaintiff's] due process rights by terminating her employment without taking the proper steps." Order (Dkt 8). The Court ordered Plaintiff to file her brief, "*including all documentation that she has regarding her termination*," no later than March 3, 2025. *Id.* (emphasis added). Plaintiff did not file any brief, especially in the manner described by the Court, by March 3. However, Plaintiff identifies Plaintiff's Response (Dkt 11) as her "brief" in response to the Court's Order. Consequently, this brief responds to "Plaintiff's Response."

[2] Although Plaintiff has styled her motion as one seeking entry of a TRO, because the Government has "had a fair opportunity to oppose it," this Court should exercise its discretion to construe the motion as one seeking entry of a preliminary injunction. *U.S. Dep't of Labor v. Wolf Run Mining Co.*, 452 F.3d 275, 283 (4th Cir. 2006) ("[A]

—1—

Congress's promulgation of the Civil Service Reform Act ("CSRA") precludes any relief for Plaintiff under any other theory or statute: the CSRA is the exclusive remedial framework. This includes circumstances where the CSRA does not provide complete relief, and even includes instances where employees are expressly excluded from the review procedures under the CSRA. And even assuming that Plaintiff could invoke this Court's jurisdiction with respect to her due process claims, she has no property interest in her probationary employment with the Internal Revenue Service, and no liberty interest in her reputation has been implicated. As a matter of law, relief—injunctive or otherwise—should be denied on these two bases alone: (1) the CSRA provides the exclusive remedy; and (2) Plaintiff has no property interest in probationary employment on which a deprivation of due process can be predicated, and no liberty interest in her reputation has been implicated. As such, Plaintiff cannot demonstrate a clear likelihood of success on the merits of her claims, as required for this Court to issue extraordinary emergency relief.

But additional reasons support denial of the Plaintiff's motion: Plaintiff has not (and cannot) justify the extraordinary emergency relief she seeks because she fails to demonstrate the clear existence of irreparable harm. The Supreme Court and lower courts have repeatedly held—for decades—that because federal courts have the equitable authority to make employees whole in the event that they are ultimately successful on the merits of any cause of action, there can be no irreparable harm in employment cases such this case. Any other conclusion would authorize any federal employee in Central Virginia to seek emergency injunctive relief in this Court immediately upon learning of a potential adverse employment action.

---

district court could properly consider a motion for a TRO as a request for a preliminary injunction . . . focusing not on a specific time period but on whether the opposing party had a fair opportunity to oppose it.").

In short, Plaintiff fails to meet the high bar for the extraordinary relief she seeks. For the reasons explained below, Plaintiff's motion should be denied.

BACKGROUND

I.       Statutory and Regulatory Background

The CSRA (codified as amended in scattered sections of 5 U.S.C.) governs federal employment. "It prescribes in great detail the protections and remedies applicable to [personnel actions], including the availability of administrative and judicial review." *United States v. Fausto,* 484 U.S. 439, 443 (1988). It "establishe[s] a comprehensive system for reviewing personnel action taken against federal employees." *Elgin v. Dep't of the Treasury,* 567 U.S. 1, 5 (2012) (quoting *Fausto*, 484 U.S. at 455). If an agency takes a final adverse action against an employee *no longer in* his or her probationary period—including removal, suspension for more than 14 days, reduction in grade or pay, or furlough for 30 days or less, 5 U.S.C. § 7512—the employee may appeal to the Merit Systems Protection Board ("MSPB"). 5 U.S.C. § 7513(d). The MSPB may order relief to prevailing employees, including reinstatement, backpay, and attorney's fees. 5 U.S.C. §§ 1204(a)(2), 7701(g). Appeal from final MSPB decisions is to the Federal Circuit, which has "exclusive jurisdiction" over such appeals. 28 U.S.C. § 1295(a)(9); 5 U.S.C. § 7703. This statutory review scheme, too, is "exclusive, even for employees who bring constitutional challenges to federal statutes." *Elgin,* 567 U.S. at 13.

Federal employees who experience some form of adverse employment action *during* their probationary period (*i.e.*, "probationers"),[3] however, generally do not enjoy a right to appeal to

---

[3]Federal regulations implementing the CSRA set out the terms and conditions for an initial appointment to a career position in the federal government. *See* 5 C.F.R. §§ 315.801 through 315.806 (Subpart H). In particular, the regulations provide that, for such employees, the first year or first two years for certain employees is a probationary

—3—

the MSPB, as they are not considered "employee[s]" for purposes of the CSRA's Chapter 75, 5 U.S.C. § 7511(a)(1), but remain properly considered as "applicants" for employment under an extended hiring and evaluation period. *See* 5 U.S.C. § 7511(a)(1)(A)-(B) (one-year trial period (competitive service)), (C) (two-year trial period (excepted service)); 5 C.F.R. § 315.801, 301.806. Nevertheless, many of the protections of the CSRA's Chapter 23 extend to both "applicants and employees." *See, e.g.,* 5 U.S.C. § 2302(a)(2)(A)(i)–(xii) (identifying "personnel action[s]" that may form the basis for alleged prohibited personnel practices "with respect to an employee in, or applicant for, a covered position in any agency").

Probationers may directly appeal their removals to the MSPB if they allege that the removal "was based on partisan political reasons or marital status." 5 C.F.R. § 315.806(a), (b); § 315.804 (governing termination of probationers for unsatisfactory performance or conduct). Probationers, however, may *not* directly appeal to the MSPB any challenge that their termination was based on "improper procedure," 5 C.F.R. § 315.806(c), unless they are a probationer whose termination is alleged to have been "based in whole or in part on conditions arising before [her] appointment." 5 C.F.R. § 315.805.[4]  Finally, employees generally may appeal adverse MSPB decisions to the Court of Appeals for the Federal Circuit. *See* 5 U.S.C. § 7703.

Additionally, in appropriate circumstances, probationers may pursue relief by filing complaints alleging certain "prohibited personnel practices" with the Office of Special Counsel

---

or trial period. *See id.* § 315.801, § 315.802. Those regulations further provide for employing agencies to use the probationary period "as fully as possible to determine the fitness of the employee and shall terminate his or her services during this period if the employee fails to demonstrate fully his or her qualifications for continued employment." *Id.* § 315.803(a). When an agency decides to terminate an employee covered by these regulations because his or her work performance or conduct during the probationary or trial period fails to demonstrate his or her fitness or qualifications for continued employment, it must notify the employee and provide "the agency's conclusions as to the inadequacies of his [or her] performance or conduct." *Id.* § 315.804(a).

    [4]Plaintiff does not allege that her termination is based "in whole or in part" on conditions arising before her appointment.

—4—

("OSC"), which may in turn pursue administrative relief before the MSPB on behalf of the probationer. *See* 5 U.S.C. § 1214; *see also id.* § 2302(a) (listing "prohibited personnel practices" within the jurisdiction of the OSC). Congress created OSC to (among other things) protect employees, applicants for employment, and former employees. 5 U.S.C. § 1212. The Special Counsel may receive and investigate complaints of prohibited personnel practices and may petition the MSPB for a stay of the personnel actions pending investigation, and based on the results of an investigation, seek corrective action from the MSPB. 5 U.S.C. § 1214.

## II.     Factual Background

As framed by Plaintiff, her complaint is a dispute about federal employment and, more importantly, specifically about *probationary* employment. Plaintiff, a probationer with the Internal Revenue Service at the time of her termination, seeks a mandatory temporary restraining order and preliminary injunction to reinstate her to her former employment.[5]

Plaintiff began her employment with the Internal Revenue Service as a Revenue Agent on December 2, 2024. Dkt 6-3 at 1. By email dated February 19, 2025, Plaintiff was directed "to come into the office tomorrow" and to "please bring [with you] any government-issued equipment, PIV and access cards, pocket commissions, travel cards and parking permit." Dkt 6-1.

On the following day, Plaintiff was notified that her employment was terminated. *See* "Notification of Termination During Probationary Period" dated February 20, 2025, Dkt 6-4 at 1.

---

[5] As originally filed, Plaintiff's Complaint and "Emergency Motion for Temporary Restraining Order (TRO) and Preliminary Injunction," (Dkt 2) ("TRO Motion"), which were dated two days before her termination, sought "to halt her imminent and unlawful termination under the Trump [A]dministration's mass firing directive". *See, e.g.,*TRO Motion at 1. Since her employment was terminated the day before her Complaint and TRO Motion were filed, Plaintiff now seeks a TRO and/or a mandatory injunction requiring her reinstatement to her former employment. *See* Plaintiff's Response (Dkt 11) (seeking TRO after termination).

The termination notice stated that Plaintiff's "appointment [was] subject to a probationary/trial period," and that based on a January 20, 2025, memorandum entitled *Guidance on Probationary Periods, Administrative Leave and Details*, from the Office of Personnel Management (OPM) (copy attached) and "taking into account your performance, and in light of current mission needs" the Agency found that her "continued employment" was "not in the public interest" and, therefore, terminated. *Id.* Plaintiff was advised that she may have appeal rights with the Merit Systems Protection Board (MSPB) and also the right to file a complaint with (among others) the Office of Special Counsel (OSC). *Id.* at 2.

It does not appear that Plaintiff pursued any of the administrative avenues for redress that were suggested to her. Instead, Plaintiff came directly to this Court and filed her Complaint and TRO Motion on February 21, 2025, alleging irreparable harm and that her employment was terminated in retaliation for her spouse's filing a civil action against Bedford County, Virginia, Dkt 2 at 3, 9,[6] and without due process. Dkt 2 at 3, 5, 6. The claim of retaliation is not consistent with Plaintiff's allegation that her termination was part of a "mass termination." *See, e.g.,* Dkt 2 at 5, 6, 8 (alleging "mass terminations"); Dkt 6-2 at 1 ("3,500 [Internal Revenue Service] probationary employees will be fired by the end of the week unless a federal court enters an injunction").[7]

On the date Plaintiff's Complaint and TRO Motion were filed, the Court immediately arranged for a telephone conference with the parties for the morning of the next business day.

---

[6] "[T]his termination interferes with the <u>Thornock v. Bedford County</u> litigation, creating a retaliatory chilling effect, whether intentional or not."

[7] As the Court correctly concluded in denying the TRO Motion to the extent that Plaintiff's termination is alleged to have been based on retaliation for the Bedford County litigation, "it is clear that President Trump did not order the termination of all the probationary employees within the Department of Treasury because of Thomock's husband's suit against Bedford County." Order (Dkt 8) at 1.

Following the telephone conference, the Court partially denied the TRO Motion "to the extent that [Plaintiff] claims the IRS terminated her in retaliation for her husband's lawsuit against Bedford County." Order, Dkt 8 at 1. The Court ordered further briefing and a hearing on the issue of whether Plaintiff's due process rights were violated. *Id.* at 1-2. The Court ordered Plaintiff to file her brief, "*including all documentation that she has regarding her termination*," no later than March 3, 2025. *Id.* (emphasis added). Plaintiff has designated "Plaintiff's Response" as her "brief" in response to the Court's Order. *See* fn 1 (above). Because Plaintiff did not provide any additional documentation regarding her termination, the United States, in providing this response, will also rely on the attachments to "Plaintiff's Motion to Clarify That Administrative Exhaustion is Not Required" (Dkt 6), the only document in the record that contains documents regarding her termination.

The United States also notes that the Court's docket sheet in this case does not reflect that Plaintiff has properly effected service of her Complaint, TRO Motion, or any other papers filed with the Court, on any of the defendants. *See* Fed. R. Civ. P. 4(i)(2) (providing the elements of proper service of process with respect to federal agency defendants). Plaintiff was given notice, and is aware of the requirement to properly serve the defendants. Statement (Dkt 9) at 2-6; "Updated Summons List With Proper Addresses," Dkt 1-1 at 1-3.

<u>STANDARD OF REVIEW</u>

Plaintiff seeks a temporary restraining order—"an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 24 (2008); *see also Toure v. Hott,* 458 F. Supp. 3d 387, 396 (E.D. Va. 2020) ("The standard for granting either a TRO or preliminary injunction is the same"). Such a request "involv[es] the exercise of a very far-

—7—

reaching power to be granted only sparingly and in limited circumstances." *Sarsour v. Trump,*
245 F. Supp. 3d 719, 728 (E.D. Va. 2017) (Trenga, J.). To be eligible for a temporary restraining
order, Plaintiff must demonstrate each of the following factors by a "clear showing": (1) a
likelihood of success on the merits; (2) irreparable harm in the absence of preliminary injunctive
relief; (3) the balance of equities between the parties tips in favor of the party seeking such relief;
and (4) the public interest favors equitable relief. *Winter,* 555 U.S. at 20, 22; *Real Truth About
Obama, Inc. v. Fed. Election Comm'n,* 575 F.3d 342, 346 (4th Cir. 2009), *vacated on other
grounds,* 559 U.S. 1089 (2010), and *reinstated in relevant part, sub nom., The Real Truth About
Obama, Inc. v. F.E.C.,* 607 F.3d 355 (4th Cir. 2010).

Further, since the standard for granting either a temporary restraining order or a
preliminary injunction is the same, and since the United States has had an opportunity to oppose
the TRO Motion, the Court should exercise its discretion to convert Plaintiff's motion to one for
a preliminary injunction. *See Toure,* 458 F. Supp. 3d at 396 (standard is the same for granting
either a TRO or preliminary injunction); *U.S. Dep't of Labor v. Wolf Run Mining Co.*, 452 F.3d
275, 283 (4th Cir. 2006) ("[A] district court could properly consider a motion for a TRO as a
request for a preliminary injunction, . . . focusing not on a specific time period but on whether
the opposing party had a fair opportunity to oppose it.").

## **ARGUMENT**

This Court should deny Plaintiff's motion for a temporary restraining order because she
has not met her burden of making a "clear showing" on *any* of the four required elements for
obtaining a preliminary injunction.

I.    **PLAINTIFF HAS NOT SHOWN A CLEAR LIKELIHOOD OF SUCCESS ON THE MERITS.**

   A.   Plaintiff Is Not Likely to Prevail on the Merits Because the CSRA Precludes Her
        Claims.

        1. The CSRA provides "an integrated scheme of administrative and judicial

review, designed to balance the legitimate interests of the various categories of federal

employees with the needs of sound and efficient administration." *Fausto,* 484 U.S. at 445.

Importantly, the CSRA's "statutory scheme . . . displays a clear congressional intent to deny the

excluded employees the protections of Chapter 75—including judicial review—for personnel

action covered by that chapter." *Fausto,* 484 U.S. at 447; *see Guitart v. United States,* 3 F.3d 439

(5th Cir. 1993) (unpub. op.); *McAuliffe v. Rice,* 966 F.2d 979, 980 (5th Cir. 1992) ("The question

before us is whether the exclusivity of the procedures set out in the CSRA, as emphatically

confirmed in *Fausto*, precludes McAuliffe's resort to APA relief here. We believe they do.");

*Hall v. Clinton,* 235 F.3d 202, 203-06 (4th Cir. 2000) (CSRA operates "to the exclusion of all

other statutory remedies for claims arising out of the federal employment relationship");[8] *Doe P*

*v. Goss,* No. 2007 WL 106523, at * 6 (D.D.C. Jan. 12, 2007) (Among other claims, the CSRA

"precludes APA actions challenging personnel decisions . . . as well as those challenging adverse

actions, including terminations" and extends to any claim that "in taking a particular adverse

personnel action, an agency violated its own regulations") (citing *Graham v. Ashcroft,* 358 F.3d

---

[8] "That the CSRA does not provide the remedy that [plaintiff] would prefer is of no moment." *Hall,* 235 F.3d
at 205 (citing *Bush v. Lucas,* 462 U.S. 367, 388-90 (1983)). *See also Zimbelman v. Savage,* 228 F.3d 367, 370-71
(4th Cir. 2000) (claims arising from federal employment are precluded even though the CSRA provided plaintiffs
with no remedy); *Lombardi v. Small Business Admin.,* 889 F.2d 959, 961 (10th Cir.1989) (CSRA precluded claims
because actions complained of arose from federal employment relationship even though many of the alleged
violations occurred after the employment relationship was terminated); *Gleason v. Malcom,* 718 F.2d 1044, 1048
(11th Cir.1983) (per curiam) (holding that claims by federal employee were barred under *Bush* even though one
claim was against coworkers because "[t]he purpose of denying a private cause of action to federal employees is to
ensure that they do not bypass comprehensive and carefully balanced statutory and administrative remedies in order
to seek direct judicial relief").

931, 935-36 (D.C. Cir. 2004)).[9]

The Supreme Court has made clear that CSRA preclusion applies, even where a remedy is not available to the employee under the CSRA:

> The CSRA established a comprehensive system for reviewing personnel action taken against federal employees. Its deliberate exclusion of employees in respondent's service category from the provisions establishing administrative and judicial review for personnel action of the sort at issue here prevents respondent from seeking review . . . [under a different statute].

*Fausto*, 484 U.S. at 455 (reasoning that allowing direct judicial review of employment claims to employees without CSRA rights would provide a more substantial right to review without the administrative exhaustion requirements imposed by the CSRA than those covered by the CSRA would have); *see also, e.g., Doe,* 2007 WL 106523 at *5. Allowing direct review of employment actions outside of the streamlined procedures of the CSRA would frustrate the congressional intent to "avoid[] an unnecessary layer of judicial review in lower federal courts." *Fausto,* 484 at 449. Rather, Congress's exclusion of employees from the protections of the CSRA does not leave those employees "free to pursue whatever judicial remedies [they] would have had before enactment of the CSRA." *Id.* at 447. Their exclusion instead demonstrated a "clear congressional intent to deny the excluded employees the protections . . . including judicial review . . . for personnel action covered by" the CSRA. *Id.; Zimbelman v. Savage,* 228 F.3d 367, 371 (4th Cir. 2000) (explaining that the courts should not "substitute our judgment for that of Congress in federal employment disputes").

---

[9] "It is no answer to invoke the principle that agencies must follow their own regulations. That was, after all, the assertion in *Fausto,* and the Court held that it was trumped by the proposition that agencies cannot purport to confer rights undermining a comprehensive congressional scheme." *Graham,* 358 F.3d at 935.
.

In short, Plaintiff does not have a remedy in this Court even where her right of review under the CSRA as a probationer is less expansive than the rights of other employees. Extensive authority has established well the proposition that even where certain federal employees are entirely "exempted by Congress from the Civil Service Reform Act[, that] does not release them from [the CSRA's] exclusive remedial framework." *Zimbelman*, 228 F.3d at 370; *see also Doe*, 2007 WL 106523, at *6 (holding that the CSRA precluded CIA employee's statutory claims regarding his termination); *Peter B. v. United States*, 570 F. Supp. 2d 78, 83 (D.D.C. 2008) ("It seems clear (albeit counterintuitive), then, that as CIA employees are expressly excluded from the review procedures under [the CSRA], they may not seek outside of the CSRA scheme any judicial review of termination decisions."); *Lane v. Wynne*, 2006 WL 4711891 (D. Md. June 23, 2006) ("This may be a harsh result, but it is not for this Court to create a remedy where Congress has determined that one should not exist . . . ."), *aff'd*, 218 F. App'x 262 (4th Cir. 2007). Plaintiff's claims are thus precluded, and Plaintiff has failed to carry her burden of establishing that this Court has jurisdiction over these claims, let alone that they have a clear likelihood of success on the merits.

2. Although the above analysis certainly precludes Plaintiff's resort to any *statutory* claim, it also precludes Plaintiff from presenting any *constitutional* claim here. In *Elgin v. Dep't of the Treasury*, 567 U.S. 1 (2012), the Supreme Court held that these principles apply equally when a plaintiff asserts a constitutional challenge to an employment action, at least where the constitutional challenge is subject to administrative and judicial review under the CSRA. *Id.* at 10-23. Applying the same "fairly discernible" standard that *Fausto* applied, the Court explained that, "[j]ust as the CSRA's 'elaborate' framework demonstrates Congress' intent

—11—

to entirely foreclose judicial review to employees to whom the CSRA denies statutory review, it similarly indicates that extrastatutory review is not available to those employees to whom the CSRA grants administrative and judicial review." *Id.* at 11 (citation omitted) (quoting *Fausto*, 484 U.S. at 443).

To be sure, *Elgin* noted that a different question would be presented if the CSRA "purport[ed] to 'deny *any* judicial forum for a colorable constitutional claim.'" *Id.* at 9 (emphasis added) (quoting *Webster v. Doe*, 486 U.S. 592, 603 (1988)).   And here, Plaintiff – as a probationer – lacks any *immediate* or *direct* access to an administrative remedy (*e.g.*, through the MSPB) as a result of the CSRA. As explained earlier, however, the CSRA grants Plaintiff the right to file complaints with OSC contending that her removal constituted one or more of thirteen specified types of "prohibited personnel practices." 5 U.S.C. §§ 1212(a)(2), 1214(a)(1)(A), 2302(a), (b)(1)-(13). As in *Elgin*, "[g]iven the painstaking detail with which the CSRA sets out the method" for employees to obtain review of constitutional claims like those asserted here, *Elgin*, 567 U.S. at 11-12, there can be no doubt that Congress intended to preclude employees from bypassing those remedies by seeking initial review of their constitutional claims in district court. *See, e.g.*, *Irizarry v. United States*, 427 F.3d 76, 79 ("[N]othing in the CSRA suggests that Congress intended resort to the [OSC] to be optional."). Moreover, when those specific remedies are considered against the backdrop of the reticulated and graduated scheme of review established in the CSRA, it is even clearer that Congress intended to require employees to pursue all available administrative and judicial remedies it carefully set forth.   And the Fourth Circuit has recognized that before seeking Article III review of a constitutional claim involving federal

—12—

employment, an employee must exhaust potential administrative remedies with the OSC, as per

the Supreme Court's decision in *Elgin*:

> "The CSRA's objective of creating an integrated scheme of review would be seriously
> undermined if . . . a covered employee could challenge a covered employment action first
> in a district court, and then again in one of the courts of appeals." . . . The exhaustion
> requirement is therefore an essential element of this statutory scheme. "For the
> exhaustion remedy to serve its intended purpose . . . the employee must inform the
> Special Counsel of the precise ground of his charge" and "'give [the OSC] sufficient
> basis to pursue an investigation which might have led to corrective action.'" . . .

> Other appellate courts to confront this issue have similarly concluded that the CSRA
> precludes judicial review of constitutional claims for equitable relief when an employee
> has failed to exhaust administrative remedies available under the CSRA.

*Fleming v. Spencer*, 718 F. App'x 185, 188-89 (4th Cir. 2018) (quoting *Elgin*, 567 U.S. at 13;

*Ward v. MSPB*, 981 F.2d 521, 526 (Fed. Cir. 1992)).

Because – as far as Defendant is aware – Plaintiff has not exhausted her available

remedies with OSC, the CSRA equally precludes her attempt to vest this Court with jurisdiction

over her constitutional claims.

B.  Plaintiff Is Not Likely to Prevail on the Merits of Her Claim Because—Lacking a
    "Property" or "Liberty" Interest—Plaintiff Was Not Entitled to Due Process.

Even assuming that this Court could exercise jurisdiction over her constitutional claims,

Plaintiff comes nowhere close to demonstrating a clear likelihood of success on the merits of

those constitutional claims. Plaintiff alleges that she was deprived of due process when her

probationary employment was terminated. However, she fails even to make a threshold showing

of a colorable constitutional claim. To advance a due process claim, a plaintiff must first

"establish that [s]he had a property or liberty interest at stake." *Smith v. Ashcroft,* 295 F.3d 425,

429 (4th Cir. 2002).

1. <u>Plaintiff has no property interest</u>. "To have a property interest in a benefit [such as, federal employment in this case], a person clearly must have more than an abstract need or desire for it [and] . . . more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). Federal employees "may have a protected 'property' interest in public employment *if contractual or statutory provisions guarantee continued employment*. . . . [A] statutory provision that a federal employee could be discharged only 'for cause' [is] a sufficient 'property' interest to invoke the constitutional guarantee of procedural due process." *Prince v. Bridges,* 537 F.2d 1269, 1271 (4th Cir. 1976) (emphasis added) (citing *Perry v. Sindermann,* 408 U.S. 593 (1971) and *Arnett v. Kennedy,* 416 U.S. 134 (1974)). "[G]overnment employees can demonstrate the requisite [legitimate claim of] entitlement where governing law 'provides that they may be discharged only for cause.'" *Lamb v. Holder,* 82 F. Supp. 3d 416, 424 (D.D.C. 2015) (citations omitted).

While federal employees who are covered by the CSRA's provisions do have a property interest in their continued employment, "[t]hose employees not covered by the termination provisions of the CSRA, . . . have *no such property right*." *Id.* (emphasis added)*; see also, Duke v. Langdon,* 701 F.2d 768 (9th Cir.1983) (Internal Revenue Service employee had no property interest in probationary employment). It is undisputed that Plaintiff was a probationer "not covered by the termination provisions of the CSRA." Further, Plaintiff has neither alleged nor provided evidence that she had a property right in her employment as an Internal Revenue Agent. In such circumstances, since federal probationers have no property interest in their continued federal employment, courts have dismissed their claims for due process violations. *See, e.g., Duke,* 701 F.2d at 769 (Internal Revenue Service probationer "has no property interest

cognizable under the Fifth Amendment") (citing *Board of Regents*, 408 U.S. at 576-78); *Hardison v. Cohen,* 375 F.3d 1262 (11th Cir. 2004) (Veterans' Administration employee had no property interest in medical residency at Veterans' Administration hospital under Title 38 of the United States Code); *Booher v. United States Postal Service,* 843 F.2d 943 (6th Cir.1988) (probationary postal service employee had no property interest in continued employment). *See also Silva v. Bieulich,* 351 F.3d 1045 (11th Cir.2003) (probationary state employee had no property interest in continued employment); *Piroglu v. Coleman,* 25 F.3d 1098, 1104 (D.C. Cir. 1994).[10]

        2. <u>Plaintiff has no liberty interest</u>. Nor does Plaintiff have a liberty interest here, which Plaintiff presumably based on the alleged "stigma" that attaches to the termination of her probationary employment. As the Supreme Court and the Fourth Circuit have held, a "mere reputational injury is insufficient to 'prevail on a constitutional claim,'" *Shirvinski v. U.S. Coast Guard*, 673 F.3d 308, 314-15 (4th Cir. 2012); instead, an employee must allege that she has been terminated from employment accompanied by a public statement about her "dishonesty or immorality" in order to trigger due process concerns, *see Ridpath v. Bd. of Govs.*, 447 F.3d 292, 308 (4th Cir. 2006) (comparing "statements that imply such serious character defects from statements that simply allege 'incompetence'").

        Plaintiff can come nowhere close to meeting this standard here. As a preliminary matter, the Internal Revenue Service did not publicize *any* information concerning the termination of

---

[10] "The legitimacy of [Plaintiff's] argument turns on whether she had a property interest in continued employment. . . . She must show 'a legitimate expectation, based on rules (statutes or regulations) or understandings (contracts, express or implied), that [s]he would continue in [her] job.' . . . [Plaintiff's] status as a probationary employee is a large hurdle for her to clear in order to establish a property interest. Probationary employment is ordinarily considered employment at will." (citations omitted) (collecting cases).

—15—

Plaintiff's probationary employment. But even a public statement indicating that a person was terminated due to poor job performance does not implicate a constitutionally protected liberty interest in a plaintiff's reputation. As the Fourth Circuit explained:

> [Even] if it is assumed . . . that the [defendant] told prospective employers that [plaintiff] was terminated for 'incompetence and outside activities,' [it does not implicate] . . . a protected liberty interest. . . . Allegations of incompetence do not imply the existence of serious character defects such as dishonesty or immorality . . . and are not the sort of accusations that require a hearing.

*Robertson v. Rogers,* 679 F.2d 1090, 1092 (4th Cir. 1982) (citations omitted).

In the current case, Plaintiff's termination notice was not published, was provided to Plaintiff only, and stated merely that "taking into account your performance, and in light of current mission needs" the Agency found that her "continued employment" was "not in the public interest." It was not communicated publicly and does not imply any character defect. Consequently, Plaintiff's liberty interest in her reputation is not affected.

## II.    PLAINTIFF HAS NOT SHOWN A LIKELIHOOD OF IRREPARABLE HARM.

### A.    Plaintiff Must Independently Demonstrate Irreparable Harm to Obtrain Extraordinary Relief.

To prevail, Plaintiffs must also make a "clear showing" that, absent an injunction, they will suffer irreparable harm that is "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. v. Breakthrough Med. Corp.,* 952 F.2d 802, 812 (4th Cir. 1991) (reversing preliminary injunction); *see Winter,* 555 U.S. at 20, 22. "[P]roving 'irreparable' injury is a considerable burden, requiring proof that the movant's injury is 'certain, great and actual—not theoretical—and imminent, creating a clear and present need for extraordinary equitable relief to prevent harm.'" *Nat'l Min. Ass'n v. Jackson,* 768 F. Supp. 2d 34, 50 (D.D.C. 2011) (quoting *Power Mobility Coal. v. Leavitt,* 404 F. Supp. 2d 190, 204 (D.D.C. 2005)).

—16—

As the Fourth Circuit has previously held, this inquiry is often dispositive of a litigant's request for emergency injunctive relief, that is, a claim for such relief can only proceed to the next step "if the party establishes irreparable harm." *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.,* 22 F.3d 546, 551 (4th Cir. 1994). In other words, "if a party makes no showing of irreparable harm, the court may deny the motion for injunctive relief without considering the other factors." *In re Navy Chaplaincy,* 516 F. Supp. 2d 119, 122 (D.D.C. 2007); *see also Winter,* 555 U.S. at 22 ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."); *Real Truth About Obama, Inc. v. FEC,* 575 F.3d 342, 346-47 (4th Cir. 2009), *vacated on other grounds,* 559 U.S. 1089 (2010). Put simply, no matter how strong Plaintiff's claim is on the merits—and as provided above, it is not strong—the lack of irreparable harm requires the denial of any request for extraordinary preliminary relief.

B.    Plaintiff Cannot Demonstrate That The Instant Action is Anything More Than a Typical Employment Dispute.

It is well settled that, as a general matter, "termination of employment does not constitute irreparable injury because of the 'possibility that adequate compensatory or other corrective relief will be available at a later date.'" *Roe v. Shanahan,* 359 F. Supp. 3d 382, 419 (E.D. Va. 2020) (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)). As the Supreme Court observed in *Sampson*, absent a "genuinely extraordinary situation," the imminent loss of government employment "will not support a finding of irreparable injury" except in "extraordinary cases" *involving more than* "external factors common to most discharged employees and not attributable to any unusual actions relating to the discharge itself" (such as "insufficiency of

—17—

savings" or "difficulties in immediately obtaining other employment"). *Sampson*, 415 U.S. at 92 n.68 (emphasis added). Such factors, "however severely they may affect a particular individual," will not support a finding of irreparable harm. *Id.* This is because "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date"—as it almost always is in cases challenging employment actions—"weighs heavily against a claim of irreparable harm." *Id.* at 90.

Following *Sampson*, courts have *repeatedly* held that emergency injunctive relief is not available to government employees seeking to challenge an employment action. "[G]iven the court's equitable powers to remedy for loss in employment through, for example, back pay and time in service credit, cases are legion holding that loss of employment does not constitute irreparable injury." *Farris v. Rice*, 453 F. Supp. 2d 76, 80 (D.D.C. 2006); *Price v. Howard Cnty. Pub. Sch. Sys.*, 2022 WL 21769772, at *3 (D. Md. June 17, 2022) (collecting cases within the Fourth Circuit); *see also, e.g.*, *Halczenko v. Ascension Health, Inc.*, 37 F.4th 1321, 1325 (7th Cir. 2022) ("A permanent loss of employment, standing alone, does not equate to irreparable harm." (internal quotation omitted)); *We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 294 (2nd Cir. 2021) (reversing and vacating grant of preliminary injunctive relief because "[i]t is well settled . . . that adverse employment consequences are not the type of harm that usually warrants injunctive relief"). Put simply, well-settled authority precludes federal employees from immediately coming to this Court seeking emergency injunctive relief whenever they are the subject of an adverse employment action.

—18—

III.    **THE BALANCE OF THE EQUITIES AND PUBLIC INTEREST BOTH FAVOR THE GOVERNMENT.**

The final requirements for obtaining a temporary restraining order require a plaintiff to demonstrate that the balance of equities tips in his or her favor, and that a preliminary injunction is in the public interest. *Winter*, 555 U.S. at 20, 22; *Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 290 (4th Cir. 2011). The balance of the equities and the public interest "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Neither the balance of the equities nor the public interest favors Plaintiff's request for preliminary relief.

The relief Plaintiff requests here would harm the public interest. Because Plaintiff's probationary employment has been terminated already—before Plaintiff filed her action—she now seeks to alter the *status quo* by seeking an order from this Court mandating affirmative action by the Internal Revenue Service reinstating her as a Revenue Agent. It is clear that Plaintiff has not been employed by the Internal Revenue Service since February 20, 2025, more than two weeks ago as of the date of this Response. Consequently, should any injunction be entered here, it necessarily would alter the *status quo*. "[M]andatory injunctions alter the *status quo* . . . ." *League of Women Voters of N.C. v. North Carolina,* 769 F.3d 224, 236 (4th Cir. 2014). "Mandatory preliminary injunctive relief in any circumstance is disfavored, and warranted only in the most extraordinary circumstances." *Taylor v. Freeman,* 34 F.3d 266, 270 n.2 (4th Cir. 1994).

Furthermore, Plaintiff is not without a remedy. As explained above, the CSRA and implementing regulations provide that she may file a complaint with the Office of Special Counsel, who is authorized to pursue claims of prohibited personnel practices. *See* 5 U.S.C.

—19—

§§ 1212, *et seq.* The Merit Systems Protection Board has jurisdiction to consider Plaintiff's

claims and, if meritorious, can provide redress to the Plaintiff.

CONCLUSION

The Court should deny Plaintiff's TRO Motion and request for injunction.

Dated: March 10, 2025.

Respectfully submitted,

ERIK S. SIEBERT
United States Attorney

BY:    ___/s/_____
ROBERT P. MCINTOSH
VSB No. 66113
United States Attorney's Office
919 East Main Street, Suite 1900
Richmond, Virginia 23219
Telephone: (804) 819-7404
Facsimile: (804) 771-2316
Email: Robert.McIntosh@usdoj.gov
*Attorney for the United States*

CERTIFICATE OF SERVICE

I hereby certify that on this date I will electronically file the foregoing with the Clerk of

Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the

following:

And I hereby certify that I will serve by email transmission a .pdf copy of the foregoing

document on the non-filing user addressed as follows:

> Rebecca Thornock
> *Plaintiff, pro se*
> Email: rmthornock@gmail.com

> /s/
> _____
> Robert P. McIntosh
> Virginia Bar Number 66113
> Attorney for the United States of America
> United States Attorney's Office
> 919 East Main Street, Suite 1900
> Richmond, Virginia 23219
> Telephone: (804) 819-7404
> Facsimile: (804) 771-2316
> Email: Robert.McIntosh@usdoj.gov

—21—