IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA

Rebecca Thornock, Plaintiff

v.

Internal Revenue Service, et al., Defendants



Case # 3:25-cv-00134-JAG

**PLAINTIFF'S MOTION TO PRESERVE PUBLIC CONFIDENCE IN THE COURT'S NEUTRALITY AND INTEGRITY**

INTRODUCTION

Plaintiff Rebecca Thornock respectfully moves the Court to address a disturbing pattern of judicial inconsistency and procedural evasion that has undermined her confidence in the fairness and neutrality of this forum. While the Court technically issued a preliminary injunction, its stated rationale—combined with its handling of the underlying TRO and subsequent denials—suggests that the ruling was not designed to protect the Plaintiff, but to shield the institution from scrutiny.

This motion is not accusatory. It is a sincere attempt to bring the Court's attention to a growing appearance of judicial bias, particularly toward pro se litigants who are already

disadvantaged by lack of counsel and access. Unless corrected, this appearance will persist and damage public confidence in the impartial administration of justice.

## I. THE COURT DELAYED RULING ON THE TRO TO AVOID SETTING A PRECEDENT

Plaintiff submitted a timely TRO citing imminent and irreparable harm. The Court failed to rule for a prolonged period despite the absence of any request for delay from the opposing party. That delay allowed the harm to occur—rendering the TRO moot by the time it was finally addressed.

Plaintiff asserts that this delay was not incidental. It was a calculated effort to avoid setting any precedent—particularly one involving a pro se litigant challenging government action at a national level. This theory is supported by the Court's later decision to grant a preliminary injunction without grounding it in Rule 65, but instead relying solely on the fact that other courts had issued similar rulings.

In other words, the Court refused to act on its own analysis, and only acted when it could hide behind the precedent set by others.

## II. THE INJUNCTION WAS PROCEDURALLY HOLLOW AND DESIGNED TO SHIELD THE COURT, NOT THE PLAINTIFF

The Court's own words confirm this. In denying Plaintiff's Amended Complaint, the Court stated:

"The Court did not find likelihood of success or irreparable harm, but rather issued the injunction because other courts had done so."

This confession renders the injunction legally hollow. It did not protect Plaintiff based on the standards of Rule 65. Instead, it functioned as a symbolic gesture designed to maintain the appearance of fairness while denying the substance of it. It was not a victory—it was a deflection.

## III. THE COURT'S RUBBER-STAMPED DENIALS EXPOSE PREJUDICE AGAINST PRO SE PLAINTIFFS

Following the preliminary injunction, Plaintiff respectfully submitted:

- A Motion for Clarification, and
- A Motion to Compel Good Faith Settlement Discussions.

Both motions were denied without explanation, via rubber stamp. Given the high-profile and constitutional nature of the issues involved, and given that Plaintiff is pro se, this absence of explanation cannot be excused.

If the Court were acting in true neutrality, it would have recognized the moment to issue an order to engage in settlement—especially when the Plaintiff's good faith offer was clearly intended to help the Court save face after issuing an apparent Rule 65-deficient injunction.

Instead, the Court doubled down on silence. The only reasonable interpretation is that the Court, aware of the damage a pro se "win" might inflict at the institutional level, simply refused to let that happen—even where the evidence and harm were clear.

## IV. THE COURT HAS FAILED TO CORRECT THE FACT THAT NO OPERATIVE COMPLAINT EXISTS

As of this filing, this case remains without a properly accepted complaint:

- The Court denied Plaintiff's first Amended Complaint without addressing its substance;
- The Clerk's Office has refused to accept Plaintiff's second Amended Complaint under Rule 15(a)(1), improperly claiming a motion to amend is required;
- The only operative document has been the Emergency TRO, which does not constitute a Rule 3 complaint.

Yet the Court continues to act as though proceedings are properly structured, allowing the case to float in procedural limbo under the illusion of legitimacy.

Under Rule 3, no civil action exists without a complaint. It is the Court's duty—especially in pro se matters—to either instruct the Plaintiff on how to correct the defect or to formally accept the amendment. By doing neither, the Court has effectively allowed this action to proceed on air, supported only by the optics of a hollow injunction.

## V. THE PATTERN IS CLEAR: OPTICS OVER JUSTICE, BIAS OVER BALANCE

The record reflects a disturbing pattern:

- Delay on the TRO to avoid precedent.
- A hollow injunction justified by peer courts, not Rule 65.
- Rubber-stamped denials of good-faith procedural motions.
- Obstruction of complaint filings, violating Rule 15(a)(1).
- No effort to guide a pro se litigant through a procedurally treacherous terrain.

Together, these actions suggest that the Court is not merely inconsistent, but protecting the integrity of its own image over the interests of justice, and treating pro se litigants as threats rather than citizens with rights.

## VI. RELIEF REQUESTED

Plaintiff respectfully requests that the Court:

1. Clarify the basis of its injunction ruling, including whether the Court stands by its statement that Rule 65 was not the basis for relief;

2. Acknowledge and explain its prior delays and rubber-stamped denials as they relate to pro se access to the Court;

3. Formally accept and docket Plaintiff's Amended Complaint submitted April 7, 2025, pursuant to Rule 15(a)(1);

4. Affirm this Court's commitment to impartiality and direct that all future pro se filings be reviewed with the clarity and transparency required for meaningful access to justice;

5. Grant such other and further relief as is necessary to restore faith in the independence of the judiciary.

## CONCLUSION

Justice is not just a result—it is a process. When the process collapses, even good rulings become suspect. Plaintiff asks this Court to correct its posture, not just for the sake of this case, but for the sake of public confidence in the judiciary itself. To let this pattern stand is to endorse a system that fears embarrassment more than it fears injustice.

Respectfully submitted,

Rebecca Thornock       *Rebecca J Thornock*

Pro Se Plaintiff

April 8th, 2025