IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

RICHMOND DIVISION

Rebecca Thornock,

Plaintiff,



v.

Internal Revenue Service, et al.,

Defendants.

Civil Action No. 3:25-cv-00134-JAG

NOTICE OF APPEAL PURSUANT TO THE COLLATERAL ORDER DOCTRINE

I. Jurisdictional Basis for Appeal

1. Plaintiff asserts that the Order denying judicial recusal:

- Conclusively determines the issue of judicial impartiality;
- Resolves an important constitutional question wholly separate from the merits of the underlying litigation; and
- Would be effectively unreviewable on appeal from final judgment, because continued proceedings under a tainted tribunal would cause irreversible constitutional harm.

2. As such, this appeal falls squarely within the Collateral Order Doctrine established by Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541 (1949), and subsequent precedents.

3. No petition for permission to appeal under 28 U.S.C. § 1292(b) is required for matters falling under the Collateral Order Doctrine.

II. Scope of Appeal

4. This appeal concerns serious constitutional violations including:

- Unjustified delays of emergency rulings, specifically the TRO
- Both Granting and then Staying the Preliminary Injunction solely based upon the rulings of other courts, without applying their reasoning or underlying law for their rulings.
- The Court's scheduling of a substantive hearing, then post hoc relabeling it as a "status conference" only after Plaintiff declined to attend;
- The failure to rule on Plaintiff's motions to stay and clarify exhaustion prior to the hearing, despite express filing deadlines and urgent constitutional context;
- The ex parte nature of the twelve-minute hearing that proceeded without Plaintiff's participation and without transcript transparency;
- The mechanical and retaliatory denials that followed immediately after, including denial of multiple pending motions of constitutional significance.
- Judicial threats of Rule 11 sanctions for protected procedural advocacy;
- The appearance and reality of systemic bias against a pro se litigant.

5. Plaintiff reiterates that her nonappearance at the April 23, 2025 hearing was not contempt, not negligence, and not delay. It was a constitutionally justified refusal to

participate in a process that had already shown signs of manipulation, exclusion, and denial of procedural protection.

6. Plaintiff is not challenging unfavorable rulings; as shown by the challenge to even the perceivably favorable ruling with the preliminary injunction, she is challenging the Court's conduct within the case — including the mischaracterization of a substantive hearing as a status conference, the twelve-minute ex parte meeting with opposing counsel, and the mechanical denials of constitutional motions that followed Plaintiff's formal Notice of Nonappearance. These actions, particularly in their sequencing and cumulative effect, create a clear appearance of procedural bias.

7. Further, the Court has failed to engage Plaintiff's allegations of impropriety with any factual or reasoned response. This failure to acknowledge or rebut the pattern of conduct substantiates the perception of partiality and violates the principle that justice must not only be done but must be seen to be done. The silence on these key issues undermines the integrity of the process and increases the necessity of appellate intervention.

8. Plaintiff further highlights the Court's disparate treatment of the parties in its application of judicial scrutiny and sanctions. The record reflects that Defendant, through its counsel Robert McIntosh, withheld key documentation — specifically the DeMartini-related materials — which were known to be directly relevant to the underlying procedural and standing issues. Rather than transparently presenting these documents to the Court, McIntosh repeatedly chose to highlight alleged deficiencies in Plaintiff's filings to Plaintiff directly in correspondence, while omitting the same facts and context from his filings with the Court.

9. Plaintiff raised this bad faith behavior explicitly and in detail — yet the Court has taken no action to address it. Instead, the Court has repeatedly threatened Plaintiff with Rule 11 sanctions for filing constitutional objections and motions that are facially grounded in law and procedure. This dual posture — ignoring demonstrable bad faith by government counsel while targeting a pro se litigant with threats — creates a clear appearance of partiality.

10. A court's responsibility is not only to adjudicate fairly but to enforce procedural accountability equally. When one party is permitted to withhold evidence and manipulate the record without consequence, while the other is sanctioned for challenging it, the appearance of impartiality is irreparably undermined

11. These issues are independent of Plaintiff's underlying claims against the Internal Revenue Service and must be addressed separately to preserve Plaintiff's constitutional rights to due process and fair adjudication.

III. Rebuttal of the Extrajudicial Source Doctrine and Expanded Constitutional Basis

12. In denying Plaintiff's motion for recusal, the Court relies on the well-known principle that opinions formed during judicial proceedings do not typically require disqualification. However, this interpretation ignores key jurisprudence, particularly the U.S. Supreme

13. Court's ruling in Liteky v. United States, 510 U.S. 540, 555 (1994), which held that judicial conduct within a case may still require recusal where it displays "a deep-seated favoritism or antagonism that would make fair judgment impossible."

14. This case presents precisely that scenario. The Plaintiff has documented most notably: (1) the retroactive relabeling of a scheduled hearing as a "status conference"; (2) the holding of a twelve-minute private meeting with opposing counsel following Plaintiff's

formal Notice of Nonappearance; (3) the Court's failure to rule on pending motions to stay or clarify exhaustion before that hearing; and (4) the mechanical, retaliatory denials of Plaintiff's motions immediately thereafter.

15. These actions, taken together, reveal not mere disagreement, but a systemic refusal to engage Plaintiff's constitutional objections. This is not bias in theory — it is procedural antagonism in fact. That pattern does not require an "outside influence" to be disqualifying; it requires only that the proceedings themselves reflect a breakdown in neutrality and appearance of fairness.

16. Moreover, while Plaintiff provided detailed factual and constitutional support for her concerns, the Court's response offered no factual counterweight — only a legal conclusion that it was not biased. A court's bare assertion of neutrality, without engaging the evidence before it, fails to satisfy the standard of due process and undermines public confidence in judicial impartiality.

17. Plaintiff further appeals the Court's denial of recusal based on an overly narrow and flawed application of the extrajudicial source doctrine. While the Court asserts that judicial bias must stem from an "outside influence" in order to justify disqualification, this assertion misconstrues both the governing law and the nature of the bias exhibited in this case.

18. Again, under Liteky v. United States, 510 U.S. 540, 555 (1994), a judge's conduct within proceedings may require recusal when it reflects "a deep-seated favoritism or antagonism that would make fair judgment impossible." This doctrine does not shield conduct that reflects systemic bias, predetermined decision-making, or procedural manipulation.

19. In the present case, the Court repeatedly justified rulings not on the basis of independent analysis under Rule 65 or Article III standing, but by deferring to other courts'

decisions involving different litigants. This includes granting a preliminary injunction because it was granted elsewhere, and staying that same injunction because other courts had stayed theirs — despite this Court raising no standing objection specific to Plaintiff. This reliance on external precedent in place of direct legal analysis constitutes an impermissible delegation of judicial discretion to outside influences.

20. This is not merely poor reasoning. It demonstrates a substitution of procedural fairness with systemic deferral — a hallmark of institutional bias. The influence at issue may not be personal, but it is nonetheless external to the Plaintiff's filings, facts, and constitutional rights. That qualifies as outside influence under any fair reading of 28 U.S.C. § 455, and the Court's refusal to recognize it deepens the appearance of partiality and pretext.

21. Furthermore, the court delayed ruling on the Temporary Restraining Order that began these proceedings with no argument from the opposing party requesting such. Only to later grant a preliminary injunction that provided no substantive relief, because it was already granted in other courts. Which was the only reason it was granted in this case. This raises serious concerns that the court is more concerned about protecting itself and its own image than ruling on the merits of this specific case and defending justice. Which is concerning as a pro se litigant working to obtain a fair trial against a powerful government entity. Because when the courts are purely image driven, procedural fairness for a pro se litigant is even more unlikely.

22. For these reasons, Plaintiff respectfully submits that the denial of recusal is not merely incorrect, but constitutionally infirm — and that interlocutory appeal is necessary to preserve due process and judicial integrity.

23. WHEREFORE, Plaintiff respectfully notices this appeal to the United States Court of Appeals for the Fourth Circuit as a collateral order appeal, and preserves all appellate rights accordingly.

Respectfully submitted,

May 2, 2025

*Rebecca J Thornock*

Rebecca Thornock

Pro Se Plaintiff

Assisted By AI