IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

REBECCA THORNOCK,
                Plaintiff,

v.                                              Civil Action No. 3:25cv134

INTERNAL REVENUE SERVICE, *et al.*,
                Defendants.

## **OPINION**

In early 2025, the Internal Revenue Service ("IRS") fired the *pro se* plaintiff, Rebecca Thornock. According to Thornock, the federal agency sacked her and other probationary employees not for poor performance, but to thwart audits and investigations into well-heeled entities.

She filed this suit against the IRS, Daniel Werfel in his official capacity as IRS Commissioner, and several John Doe IRS officials for nine violations of procedural and substantive protections. Thornock alleges a lack of process under the Fifth Amendment's Due Process Clause (Count One); the selective enforcement of federal employment protections (Count Two); a violation of the Equal Protection Clause (Count Three); an infringement of her Fifth Amendment right to substantive due process (Count Four); a violation of the Administrative Procedure Act (Count Five); a violation of the Whistleblower Protection Act (Count Six); a pattern of bad faith and procedural misconduct (Count Seven); a civil conspiracy to violate constitutional rights (Count Eight); and acts of constructive fraud and procedural deception (Count Nine).

The defendants now move to dismiss all claims in the amended complaint. First, pursuant to Federal Rule of Civil Procedure 12(b)(1), the defendants argue that the Civil Service Reform Act of 1978 ("CSRA") divests this Court of jurisdiction. They then argue that Thornock fails to

state a claim under Federal Rule of Civil Procedure 12(b)(6) because, as a probationary employee, she had no constitutional interest in her employment.

Whatever the merits of Thornock's claims, the Court lacks jurisdiction because Congress has established another comprehensive adjudicatory forum for her federal employment dispute. Accordingly, the Court will dismiss the amended complaint.

## I. BACKGROUND

### A. Factual Allegations[1]

In December of 2024, Thornock began working as a probationary agent at the IRS. (*See* ECF No. 43 ¶ 4.) During her brief tenure, she "performed her job well, with exceptional testing scores" and "no disciplinary record." (ECF No. 2, at 3.) In early 2025, President Donald Trump began culling probationary employees, including IRS agents, from the federal workforce. (*Id.* at 2–3.) In February of that year, the IRS informed Thornock that it would terminate her employment without notice or a hearing. (*Id.*; ECF No. 43 ¶ 17.)

Thornock alleges that these terminations were "a deliberate and strategic effort to remove employees engaged in audits and investigations of high-profile entities." (ECF No. 43 ¶ 6.) Specifically, she asserts that the workforce reductions "disproportionately targeted her division and similarly situated employees without justification." (*Id.* ¶ 4.) Despite this alleged targeting, "senior officials and political appointees were excluded from workforce reductions." (*Id.* ¶ 41.)

---

[1] Usually, courts look only to the facts alleged in the complaint for a 12(b)(6) analysis. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016). In appropriate cases, however, courts may consider (1) "documents incorporated into the complaint by reference" and (2) "matters of which a court may take judicial notice." *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011) (citation omitted).

Here, the Court looks also to facts alleged in Thornock's motion for a temporary restraining order, which she refers to in her amended complaint.

2

Thornock also contends "IRS officials knew" that these mass firings involved "procedural violations," but continued with them. (*Id.* ¶ 16.)

### B. Procedural History[2]

On February 21, 2025, Thornock filed her initial complaint[3] and a motion for a temporary restraining order and permanent injunction to invalidate her termination.[4] On March 17, 2025, the Court provisionally granted a preliminary injunction because district courts in California and Maryland issued injunctions that "effectively reinstate[d] Thornock to her position." (ECF No. 24, at 2.) The Court warned her, however, that its injunction would terminate if the California and Maryland injunctions were reversed or vacated. (*Id.*)

On March 24, 2025, Thornock filed several motions and sought to file an amended complaint that stated she would likely succeed on the merits given the grant of a preliminary injunction. (*See* ECF Nos. 26–32.) In denying all seven motions, the Court explained that it entered an injunction only because district courts in California and Maryland effectively reinstated her. (ECF No. 33.) Even so, on April 7, 2025, Thornock filed an amended complaint without leave of court because no defendant filed an answer or dispositive motion. (*See* ECF No. 42.);

---

[2] The Court recites only the procedural history relevant to how the amended complaint came before the Court and why the defendants' motion to dismiss came in October of 2025.

[3] (ECF No. 1.) Thornock initially named eleven defendants: the IRS; the U.S. Department of the Treasury; the Office of Personnel Management; Office of Management and Budget; the Department of Government Efficiency ("DOGE"); Dougles O'Donnell, in his official capacity; Russell Vought, in his official capacity; Scott Bessent, in his official capacity; Steve Davis, in his official capacity; Charles Ezell, in his official capacity; and Elon Musk, in his official capacity. It appears that she has terminated most of these defendants because her amended complaint lists as defendants only the IRS, Werfel in his official capacity as IRS Commissioner, and the John Doe IRS officials.

[4] (ECF No. 2.) In other filings, Thornock notes that she attempted to file her TRO motion on February 19, 2025, but could not because inclement weather had closed the federal courthouse. (ECF No. 4.) The Clerk also initially rejected her motion because she failed to adequately list the defendants' address. Regardless, the Court accepted her TRO as timely filed.

3

Fed. R. Civ. P. 15(a).  Eventually, the Court stayed its own injunction on April 11, 2025, because the United States Supreme Court stayed the California injunction.  (ECF No. 58.)

This Court then scheduled a hearing for April 23, 2025.  (ECF No. 59.)  Before the hearing, Thornock asked the Court to lift the stay on its injunction, (ECF No. 60), and told the Court that she would not attend the scheduled hearing, (ECF No. 70).  Even though the Court warned Thornock that it might rule against her if she did not appear, Thornock did not attend the April 23 hearing, during which the Court denied Thornock's request to reinstate the injunction in this case. (ECF No. 76.)  On April 28, 2025, Thornock filed thirteen motions contesting the Court's rulings made in her absence.  (ECF Nos. 86–98.)  The Court denied all thirteen motions. Thornock then moved for the Court to recuse itself, which the Court declined to do.  (*See* ECF No. 105.)

On May 2, 2025, Thornock appealed the denial of her motion to recuse to the United States Court of Appeals for the Fourth Circuit.  (ECF No. 106.)  Three days later, the defendants filed a motion to dismiss this case.  (ECF No. 108.)  Because the Court did not have jurisdiction to resolve the request to dismiss during an interlocutory appeal, the Court terminated the motion and directed the defendants to refile it when the appeal concluded.  (ECF No. 110.)

On October 15, 2025, the Fourth Circuit's mandate dismissing Thornock's appeal took effect.  (ECF No. 118.)  The defendants then filed their motion to dismiss on October 28, 2025, and the Court issued a *Roseboro* notice the next day.  (ECF Nos. 120, 122.)  When Thornock did not respond timely, the Court gave her another fourteen days to respond.  (ECF No. 123.)  Since giving that fourteen-day extension, the Court has not received any filing from Thornock.

## II. DISCUSSION

### A. Legal Standard[5]

A court should dismiss a case "for lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). The plaintiff, as the party asserting jurisdiction, bears the burden to prove proper subject matter jurisdiction. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). Nevertheless, when a defendant claims that a complaint fails to allege facts which support jurisdiction, a court takes "the facts alleged in the complaint . . . as true." *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009) (citation omitted).

### B. Subject Matter Jurisdiction

Congress may deprive federal district courts of jurisdiction over civil claims. *See Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 5 (2000). Indeed, Congress may even "preclude jurisdiction by creating a statutory scheme of administrative adjudication and delayed judicial review in a particular court." *Bennett v. U.S. Sec. and Exch. Comm'n*, 844 F.3d 174, 178 (4th Cir. 2016) (citing *Thunder Basin Coal Co. v. Reich*, 500 U.S. 200, 207 (1994)). To determine whether such a scheme removes jurisdiction, a court engages in a two-step inquiry. *See Thunder Basin*, 510 U.S. at 207, 212. First, a court examines whether Congress's intent to divest jurisdiction is "fairly discernable in the statutory scheme." *Id.* at 207. The Court then considers whether a plaintiff's "claims are the type Congress intended to be reviewed within this statutory structure." *Id.*

---

[5] "[A] court that lacks jurisdiction has no 'authority' to issue a ruling 'on the merits.'" *Frazier v. Prince George's Cnty.*, 140 F.4th 556, 562 (4th Cir. 2025) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 562 U.S. 574, 577 (1999)). Accordingly, because the CSRA divests jurisdiction over this case, the Court need not reach the defendants' 12(b)(6) arguments. *See id.*

5

The Supreme Court has held that the CSRA generally impedes jurisdiction over federal employees' employment disputes.[6]   Congress passed the CSRA "to replace the haphazard arrangements for administrative and judicial review of personnel action." *Fausto*, 484 U.S. at 444 (citation omitted).   The Act governs three types of employment decisions: actions that violate a system based on merit, 5 U.S.C. § 2301(b); adverse employment actions like removal, 5 U.S.C. § 7502; and actions taken in response to unacceptable performance, 5 U.S.C. § 4303.   Depending on the type of action at issue, the CSRA provides several processes for review.[7]   Still, the CSRA allows a federal agency—the Merit System Protection Board ("MSPB")—to assess all these personnel decisions.[8]   Ultimately, any employee or applicant "adversely affected or aggrieved by a final order or decision of the [MSPB] may obtain judicial review" by appealing to the United States Court of Appeals for the Federal Circuit.   5 U.S.C. § 7703(a)(1), (b)(1)(A).[9]   And although probationary employees have fewer grounds for recourse than non-probationary employees, they still have avenues to seek review from the MSPB and appeal to the Federal Circuit.   *See Maryland v. U.S. Dep't of Agric.*, 151 F.4th 197, 205 (4th Cir. 2025).

---

[6] *See United States v. Fausto*, 484 U.S. 439, 448 (1988); *Elgin v. Dep't of Treasury*, 567 U.S. 1, 10–11 (2012).

[7] For example, for actions that violate the merits system principles, the CSRA requires employees to file complaints with an Office of the Special Counsel for investigation. *See* 5 U.S.C. § 1214(b)(2)(b).   The Act, however, does not require the Special Counsel investigation for adverse employment actions. *See id.* § 7503(c), 7513(d).

[8] *See* 5 U.S.C. § 1214(b)(2)(C) (explaining that MSPB may provide for certain "corrective action" regarding actions that violate the merits system principles); *id.* § 4303(e) (allowing appeal to the MSPB for actions based on unacceptable performance).

[9] 5 U.S.C. §§ 7703(b)(1)(B) and (2) allow filing outside the Federal Circuit, but these provisions are not relevant to the instant case.

Upon applying the relevant two-step inquiry to the CSRA, the Court concludes that it lacks jurisdiction over Thornock's claims.

### 1. *Congressional Intent*

"[W]hether a statute is intended to preclude initial judicial review is determined from the statute's language, structure, and purpose, its legislative history, and whether the claims can be afforded meaningful review." *Thunder Basin*, 510 U.S. at 207. In assessing the CSRA under this framework, the Supreme Court has held that the Act's text and structure "indicate[] that extrastatutory review is not available to those employees to whom the CSRA *grants* administrative and judicial review." *Elgin*, 567 U.S. at 11 (emphasis in original). In other words, the comprehensive nature of the CSRA's review scheme shows that Congress meant for that remedial process to be the *exclusive* remedial process. *See id.* In fact, the process is so comprehensive that Congress also intended "to entirely foreclose judicial review to employees to whom the CSRA *denies* statutory review."[10]

The CSRA, however, precludes jurisdiction only "when the statute functions as Congress intended."[11] Recently, the Fourth Circuit questioned "whether the CSRA's adjudicatory scheme continues to function as intended" both because the President of the United States fired the Special Counsel without cause and the MSPB "lack[ed] quorum." *Id.* These circumstances threw into doubt whether the CSRA could provide what Congress wanted: an efficient dispute resolution forum divorced from political influence. *Id.* Accordingly, the Fourth Circuit requires "a factual

---

[10] *Id.* (emphasis added); *see also Fausto*, 484 U.S. at 448.

[11] *Nat'l Ass'n of Immigr. Judges v. Owen*, 139 F.4th 293, 305 (4th Cir. 2025), *reh'g en banc denied*, 160 F.4th 100 (4th Cir. 2025), *petition for cert. filed sub nom. Margolin v. Nat'l Ass'n of Immigr. Judges* (U.S. 25-767).

7

inquiry [into] whether the CSRA continues to provide a functional adjudicatory scheme." *Id.* at 308.

In this case, the plaintiff "has not alleged, nor does the record suggest, that the CSRA review scheme is unavailable or nonfunctional here." *Williams v. United States Off. of Pers. Mgmt.*, 4:24cv6404, 2026 WL 125555, at *4 (D.S.C. Jan. 16, 2026). Further, looking to the public record,[12] the Court finds that the MSPB no longer lacks a quorum because the Senate confirmed a new member. 171 Cong. Rec. S6992 (daily ed. Oct. 7, 2025). Accordingly, no evidence suggests a practical problem that has frustrated Congress's intent to deprive the Court of jurisdiction.

Upon this record, Congress's intent to divest jurisdiction is "fairly discernable in the statutory scheme." *See Thunder Basin*, 510 U.S. at 207.

### 2. *Type of Claims*

For the CSRA to preclude the Court's jurisdiction over this case, Thornock's claims must be "the type Congress intended to be reviewed within this statutory structure." *Id.* at 212. Three considerations guide this analysis: (1) whether precluding jurisdiction would "foreclose all meaningful judicial review"; (2) whether the claims are "wholly collateral" to the statute's review provisions; and (3) whether the claims fall "outside the agency's expertise." *Id.*

### a. *Meaningful Judicial Review*

Meaningful judicial review happens so long as an Article III court can evaluate a case "in due course." *Bennett*, 844 F.3d at 186. Accordingly, this consideration is satisfied when a federal court of appeals can eventually address an agency's action. *Axon Enter., Inc. v. Fed. Trade*

---

[12] On a motion to dismiss, a court may properly take judicial notice of matters in the public record. *See Papasan v. Allain*, 478 U.S. 265, 268 n.1 (1986); Fed. R. Evid. 201(b)(2). Courts can consider congressional materials as matters of public record. *See Nat'l Fed'n of the Blind v. U.S. Abilityone Comm'n*, 421 F. Supp. 3d 102, 122 n.8 (D. Md. 2019).

*Comm'n*, 598 U.S. 175, 190 (2023) (citations omitted). Indeed, the Supreme Court has said that the CSRA provides meaningful review of even constitutional claims because "the Federal Circuit has authority to consider and decide [such] constitutional claims." *Elgin*, 567 U.S. at 21.

Here, the regulatory review scheme provides Thornock with the possibility of meaningful judicial review. Although the statute itself does not allow probationary employees to petition the MSPB, federal regulation does. *See* 5 C.F.R. §§ 315.805, 315.806. Indeed, probationary employees may challenge terminations for "improper procedure" or discrimination based on "partisan political reasons or marital status." *Id.* § 315.805(b), (c). And if the MSPB finds against Thornock on a regulatory claim, she then has a statutory right to appeal to the Federal Circuit. *See* 5 U.S.C. § 7703(b).

All of Thornock's claims concern improper procedure or undue political influence. Accordingly, Thornock could have brought these claims to the MSPB pursuant to federal regulation, and she could have found further review in a federal appellate court. This process, therefore, offers meaningful judicial review.

### b. Wholly Collateral

Courts generally retain jurisdiction over those claims that are "wholly collateral" to the CSRA's review provisions. *Elgin*, 567 U.S. at 22. "Under this standard, claims are not wholly collateral when they are 'the vehicle by which [the plaintiffs] seek to reverse' agency action." *Bennett*, 844 F.3d at 186 (quoting *Elgin*, 567 U.S. at 22) (alteration added). In other words, courts lose jurisdiction only over those claims directly related to a personnel action and the scope of the CSRA's review mechanism. *See id.* District courts may lose jurisdiction even over constitutional questions. *Elgin*, 567 U.S. at 22.

Here, Thornock's claims are not wholly collateral because each serves as a vehicle to reverse the IRS's decision to terminate her employment.

### c. Agency's Expertise

While agency expertise usually implies experience with "technical inquiries" tied to complex facts, the Supreme Court has "adopted a broader conception of agency expertise" in the CSRA jurisdictional context. *Bennett*, 844 F.3d at 187 (citations omitted). Indeed, the MSPB's expertise extends even to legal claims over personnel actions. *See Elgin*, 567 U.S. at 22–23. Here, Thornock's claims—constitutional, statutory, or otherwise—necessarily involve the MSPB's expertise. Each presents a legal question implicating the core area of the MSPB's expertise: federal personnel action. Because the CSRA designates these kinds of questions to the MSPB, they fall squarely in MSPB's wheelhouse.

Accordingly, Thornock's claims are the type of claims over which Congress intended to preclude this Court's review. *See Thunder Basin*, 510 U.S. at 212

### III. CONCLUSION

The CSRA precludes jurisdiction over Thornock's suit. Accordingly, the Court will dismiss her amended complaint without prejudice.[13]

The Court will enter an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record and to Thornock.

Date: 7 April 2026
Richmond, VA

/s/
John A. Gibney, Jr.
Senior United States District Judge

---

[13] "[D]ismissals for lack of subject matter jurisdiction typically are without prejudice" because no court has adjudicated the merits of the claim. *Albert v. Lierman*, 152 F.4th 554, 563 n.9 (2025).